[No. A051808. First Dist., Div. Three. Oct. 31, 1991.]

MARYLYN S. RICE, Plaintiff and Respondent, v.
DEAN WITTER REYNOLDS, INC., et al., Defendants and Appellants;
RONALD REINHOLD, Defendant and Respondent.

[No. A052638. First Dist., Div. Three. Oct. 31, 1991.]

RONALD REINHOLD, Cross-complainant and Respondent, v.
DEAN WITTER REYNOLDS, INC., et al., Cross-defendants and
Appellants.

**COUNSEL**

Crosby, Heafey, Roach & May, Eric G. Wallis, James C. Martin and Paul D. Fogel for Defendants and Appellants and Cross-defendants and Appellants.

Merrill & Arnone, William J. Arnone, Jr., Ross B. Jones and William S. Snell for Plaintiff and Respondent, Defendant and Respondent and Cross-complainant and Respondent.

## OPINION

**WHITE, P. J.**—Dean Witter Reynolds, Inc. (Dean Witter), and James Sherbourne[1] appeal after the trial court denied their petition to compel arbitration in a dispute arising out of a brokerage agreement. The trial court denied arbitration because the plaintiff, Marylyn S. Rice, alleged in her complaint that Dean Witter and a codefendant, Ronald Reinhold, had obtained the brokerage agreement by fraud. We reverse an order imposing sanctions for the filing of a frivolous motion, but otherwise affirm the judgment.

### I

### FACTS

Mrs. Rice is a 75-year-old woman in poor health. In her verified complaint, she alleged that beginning in 1981, her then son-in-law, codefendant Reinhold, represented to Mrs. Rice that he was a sophisticated businessman. Over time, Mrs. Rice came to trust Reinhold's integrity and business judgment. Eventually, she opened a checking account on which Reinhold was an authorized signatory so he could assist in managing her personal and business affairs. Because of this, Mrs. Rice claims a fiduciary relationship existed between her and Reinhold.

Sometime in 1981, Reinhold needed a $25,000 loan for various business ventures. Mrs. Rice agreed to make the loan. At Reinhold's request, Mrs. Rice went with him to the Santa Rosa Dean Witter office to secure the loan. There, she met James Sherbourne, a Dean Witter broker, who was a personal friend and business associate of Reinhold. Both Sherbourne and Reinhold knew Mrs. Rice was unsophisticated in business and had no experience with securities investments. Relying on Sherbourne's and Reinhold's professional

---

[1] Both appellants are sometimes collectively referred to as "Dean Witter."

advice and representations, Mrs. Rice signed documents placing 1,332 shares of Chevron Corporation (Chevron) stock, which she had inherited in 1968, into a margin account with Dean Witter; acting on the defendants' advice, Mrs. Rice also borrowed $25,000 against those shares.

Based on the representations of both Sherbourne and Reinhold, Mrs. Rice intended and believed she was merely executing papers necessary to *loan* Reinhold $25,000. In fact, the "Customer's Agreement" Mrs. Rice signed ostensibly permitted Dean Witter to sell her stock "for any reason whatsoever" if Dean Witter deemed it necessary for its protection. In addition, the Customer's Agreement contained a clause requiring Mrs. Rice to arbitrate any controversy arising out of or relating to the contract.[2]

Mrs. Rice further alleged that Reinhold and Sherbourne misrepresented or concealed the true nature of the documents she had signed. She did not understand the true nature of the documents placed before her, and would not have signed them had she known their true nature and effect. In particular, she would not have assented to the provision permitting Dean Witter to sell her stock, and would not have waived her right to a jury trial.

In 1982 Mrs. Rice authorized Reinhold to deposit 460 shares of Pacific Gas and Electric stock into the Dean Witter account, and to liquidate those shares and purchase new shares of Chevron stock. Later, at Reinhold's direction, Mrs. Rice deposited another 1,332 shares of Chevron stock into the Dean Witter account.

Between 1981 and 1988, Reinhold made numerous unauthorized withdrawals from the Dean Witter account and speculated in the account by making unauthorized purchases and sales. Mrs. Rice alleged on information and belief that Sherbourne knowingly participated in these unauthorized activities. Eventually, Reinhold completely liquidated the Dean Witter account, selling all of the Chevron stock.

In order to keep the unauthorized withdrawals and speculation secret, Reinhold intercepted Mrs. Rice's account statements and deposited funds

---

[2]Clause 16 of the Customer's Agreement reads as follows: "Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction."

with Dean Witter to match the dividend that should have been paid on the Chevron stock; Dean Witter then remitted funds in the amount of the declared dividend to Mrs. Rice. By managing the account in this manner, defendants concealed the sale of the Chevron stock from Mrs. Rice.

In March of 1988, Mrs. Rice's daughter was in the process of obtaining a divorce from Reinhold; because of this, Mrs. Rice removed Reinhold from all of her business affairs and bank accounts. However, Mrs. Rice did not discover her Chevron stock had been sold until October of 1988, when she did not receive a dividend check.

Based on these and other facts, Mrs. Rice filed a complaint against Dean Witter, Sherbourne, and Reinhold for fraud, breach of fiduciary duty, negligence, breach of contract, and other causes of action. Dean Witter and Sherbourne answered with a petition to compel arbitration pursuant to the arbitration clause in the Customer's Agreement signed by Mrs. Rice. Mrs. Rice opposed arbitration on the grounds that the Customer's Agreement was obtained by fraud in the *inception* and because fraud "permeated" the entire contract. After a hearing, the trial court denied Dean Witter's petition to compel arbitration against Mrs. Rice, but did not specify which fraud theory it was relying on. The court noted that it would deny the petition under any standard of review that might be applicable; in other words, the court determined that Mrs. Rice's complaint and supporting allegations of fraud were sufficient to survive a demurrer, and were also sufficient to raise a triable issue of fact on the issue of fraud so as to survive summary judgment.

While the first petition to compel was pending, Reinhold answered the complaint and filed a cross-complaint against Dean Witter and Sherbourne for apportionment of fault. After the court denied the first arbitration petition, Dean Witter filed a second petition, this time against Reinhold to compel arbitration on his cross-complaint. Reinhold opposed the petition on the ground he had never entered into any written agreement with Dean Witter. The trial court denied this second petition, and ordered Dean Witter to pay Mrs. Rice $750 as a sanction for filing a frivolous motion.[3]

Dean Witter and Sherbourne filed timely appeals from the orders denying the petitions to compel arbitration, and the matters have been consolidated on appeal. The orders denying arbitration are appealable under Code of Civil Procedure section 1294, subdivision (a).

---

[3]Although Reinhold filed a written in propria persona opposition to the motion to compel arbitration, he did not appear at the hearing. Mrs. Rice, on the other hand, filed written opposition and appeared at the hearing through counsel.

## II

### DISCUSSION

■ The present case is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (the Act). (*Strotz* v. *Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 212, fn. 3 [272 Cal.Rptr. 680] [review den. Nov. 14, 1990, and cert. den. Apr. 1, 1991, __ U.S. __ (113 L.Ed.2d 469, 111 S.Ct. 1417)]; *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 24-25 [136 Cal.Rptr. 378]; 9 U.S.C § 2.) Generally, under the Act, arbitration is strongly favored, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25 [74 L.Ed.2d 765, 785, 103 S.Ct. 927]; *Thorup* v. *Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 233-234 [225 Cal.Rptr. 521].)

Nevertheless, despite the policy in favor of arbitration, the Act specifically states that an arbitration clause is enforceable *unless* there are "grounds as exist at law or in equity for the revocation of *any* contract." (9 U.S.C. § 2, italics added.) "Thus state law, whether of legislative or judicial origin, is applicable [to arbitration clauses] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (*Perry* v. *Thomas* (1987) 482 U.S. 483, 493, fn. 9 [96 L.Ed.2d 426, 437, 107 S.Ct. 2520], italics in original; see also *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, 67 Cal.App.3d at p. 33, fn. 5.)

■ In California, two distinct state law theories have emerged which permit a litigant to avoid an arbitration agreement on the ground of fraud. The first—commonly called "fraud in the inception"—requires the litigant to show that the fraud went to the inception or execution of the agreement, so that the promisor did not in fact voluntarily assent to any part of the purported contract of which the arbitration clause is a part.

The second theory—commonly known as the "permeation doctrine"—is not as well defined. Generally, under this theory, the litigant seeking to avoid arbitration must prove the fraud so permeated the contract and the relationship between the parties that it vitiated the entire agreement.

As we explain below, all California courts which have addressed the issue agree that fraud in the inception is a valid ground for avoiding arbitration. However, the courts are divided on the validity of the permeation doctrine.

## A. *Fraud in the Inception.*

 We first consider whether the order denying arbitration with respect to Mrs. Rice may be sustained on the ground of fraud in the inception. We conclude that it may be sustained on this ground.

We begin our analysis with *Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801]. In *Prima Paint,* the United States Supreme Court held that an arbitration clause is severable from the principal contract in which it is located. Consequently, claims of fraud which may vitiate the principal contract do not necessarily affect the agreement to arbitrate. Based on this reasoning, the Supreme Court held that in ruling on a petition to compel arbitration, the trial court "may consider only issues relating to the making and performance of the agreement to arbitrate" and may not "consider claims of fraud in the inducement of the contract generally." (*Id.*, at p. 404 [18 L.Ed.2d at p. 1277]; *Strotz* v. *Dean Witter Reynolds, Inc., supra,* 223 Cal.App.3d at pp. 212-213; see also *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 314, 318-319 [197 Cal.Rptr. 581, 673 P.2d 251].)

The "fraud in the inception" theory is consistent with *Prima Paint* because it assumes that the party seeking to avoid arbitration did not enter into *any* contract, and thus did not assent to the arbitration clause. Consequently, fraud in the inception of a contract is necessarily directed at both the principal contract and any arbitration agreement contained therein. (*Strotz* v. *Dean Witter Reynolds, Inc., supra,* 223 Cal.App.3d at pp. 217-218.)

 In *Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011 [225 Cal.Rptr. 895] the court summarized the distinction between fraud in the inception, and the more garden variety "fraud in the inducement": " 'In the usual case of fraud, where the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable.* In order to escape from its obligations the aggrieved party must *rescind . . . .* [¶] [T]he cases recognize the familiar distinction between fraud in the inducement . . . and fraud in the *inception, factum, or execution.* If the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and it is *void.* In such a case it may be disregarded without the necessity of rescission. [Citations.]' " (*Id.*, at p. 1028, quoting 1 Witkin, Summary of Cal. Law (8th ed. 1973) §§ 321-322, pp. 270-271, italics in original.)

■ Every California case which has addressed the issue has concluded that fraud in the inception is sufficient to avoid an arbitration clause, and that the court[4]—not the arbitrator—must determine if such fraud exists. (*Strotz* v. *Dean Witter Reynolds, Inc., supra,* 223 Cal.App.3d at pp. 217-218; *Ford* v. *Shearson Lehman American Express, Inc., supra,* 180 Cal.App.3d at pp. 1028-1029; see also *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 67 Cal.App.3d at p. 30 and *Strotz, supra,* 223 Cal.App.3d at p. 218, fn. 8.)

Here, the allegations of fraud in the verified complaint were sufficient to place the issue of fraud in the inception before the court; this permitted the court to deny the petition to compel arbitration. Mrs. Rice alleged that both Sherbourne and Reinhold knew she was unsophisticated in business and had no experience with securities investments. Consequently, she relied completely on the advice of both Reinhold and Sherbourne in deciding to execute the Customer's Agreement. Based on the representations of Sherbourne and Reinhold, Mrs. Rice believed she was merely executing papers necessary to *loan* Reinhold $25,000. She was not aware the "Customer's Agreement" she signed ostensibly permitted Dean Witter to sell her stock "for any reason whatsoever" if Dean Witter deemed it necessary for its protection. Nor was she aware that the Customer's Agreement contained a clause requiring her to arbitrate any controversy arising out of or relating to the contract.

Mrs. Rice further alleged that Reinhold and Sherbourne misrepresented or concealed the true nature of the documents she had signed. She did not understand the true nature of the documents placed before her, and would not have signed them had she known their true nature and effect. In particular, she would not have assented to the provision permitting Dean Witter to sell her stock, and would not have waived her right to a jury trial, had she known this is what she was doing.

In *Strotz* v. *Dean Witter Reynolds, Inc., supra,* nearly identical allegations were found sufficient to raise an issue of fraud in the inception. There, the plaintiff alleged that "defendants deceived her as to the nature and effect of the documents she was signing and that had she known the documents contained an agreement to arbitrate, she would not have signed the documents." (223 Cal.App.3d 208, 218; see also *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 67 Cal.App.3d at p. 30.)

In short, the allegations here are sufficient to establish that Mrs. Rice was "deceived as to the nature of [her] act, and actually [did] not know what [she

---

[4]We use the word "court" in its broad sense here, since a litigant is entitled to a jury trial on the issue of fraud. (9 U.S.C. § 4.)

was] signing"; consequently, assuming Mrs. Rice can ultimately prove her allegations, there was no mutual assent and the agreement is void. (*Ford* v. *Shearson Lehman American Express, Inc., supra,* 180 Cal.App.3d at p. 1028.)

B. *The Permeation Doctrine.*

As we stated above, the trial court did not specify which theory it relied on: fraud in the inception or the permeation doctrine. Since we have already determined the trial court ruling is supported by a fraud in the inception theory, we need not discuss the alternative theory advanced to support the orders denying arbitration. (See generally 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266 ["If the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion." (Italics in original.)]; *Constance B.* v. *State of California* (1986) 178 Cal.App.3d 200, 211 [223 Cal.Rptr. 645].)

Nevertheless, to provide some guidance to the trial court, we do note there is a sharp conflict in the cases over the validity of the permeation doctrine. Both *Ford* v. *Shearson Lehman American Express, Inc., supra,* 180 Cal.App.3d at pages 1026-1027 and *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 67 Cal.App.3d at page 27, hold that fraud which permeates the entire contract, including the arbitration provision, vitiates the arbitration agreement and requires judicial determination. On the other hand, *Strotz* v. *Dean Witter Reynolds, Inc., supra,* 223 Cal.App.3d at pages 212-217 specifically rejects the permeation doctrine on the ground it is inconsistent with *Prima Paint.*

The conflict in the cases focuses on the difference between fraud which goes to the "making" of a contract and fraud which merely goes to the "performance" of a contract. *Ford* holds that the permeation doctrine vitiates an arbitration clause when the fraud goes to the making of a contract, but does not vitiate such a clause when the fraud is merely a " 'disappointed expectation' " concerning performance. (180 Cal.App.3d at pp. 1022-1023.) On the other hand, *Strotz* holds that "fraud in the making *or* performance of a principal contract is to be decided by the arbitrator. The issue of fraud is to be decided by the court only where it is alleged the arbitration agreement itself was obtained by fraud or is part of a fraudulent scheme. It is not sufficient to allege simply that the arbitration agreement is located in a contract which was otherwise procured by fraud." (223 Cal.App.3d at p. 214, italics added.)

At this juncture, we need not decide which side has the better of the argument. However, for the benefit of the trial court, we recommend that it

explicitly decide the fraud in the inception issue *before* it decides the permeation issue. The trial court (or jury) should make separate and explicit findings on each theory. If the court or jury determines that arbitration may be avoided because there was no meeting of the minds due to fraud in the inception, it may be unnecessary to address the difficult issue of permeation on a subsequent appeal.

C. *Trial Court Standard of Review.*

■ The parties also disagree on the standard the trial court should have employed to determine if Mrs. Rice had made a sufficient showing to defeat the motion to compel arbitration. Dean Witter contends a plaintiff cannot avoid arbitration by claiming fraud in connection with the arbitration provision unless he presents *evidence* to support the claim. Mrs. Rice, on the other hand, contends the question of fraud must be set for judicial determination if the plaintiff merely *alleges* facts in the complaint which, if true, are sufficient to avoid arbitration. Wisely, the trial court specifically found that it would deny the motion to compel arbitration under *either* standard.

The position advanced by Mrs. Rice is supported by *Strotz* v. *Dean Witter Reynolds, Inc., supra.* There, the plaintiff alleged the operative facts in her complaint; these facts were "supplemented" by declarations submitted by the parties. (223 Cal.App.3d at p. 210, fn. 1.) The *Strotz* court noted that under section 4 of the Act, the parties are entitled to a jury trial on the issue of whether a valid agreement to arbitrate exists and that this issue should be determined after a full trial, not on affidavits. (*Ibid.*; 9 U.S.C. § 4.) The court added that "in ruling on a petition to compel arbitration, the court should merely determine whether plaintiff has *alleged* sufficient facts of fraud directed at the making of the arbitration agreement to warrant a trial on the issue of the validity of the agreement." (*Strotz, supra,* 223 Cal.App.3d at p. 210, fn. 1, italics added.) Later in its opinion, the *Strotz* court noted that neither the federal Arbitration Act nor California's comparable state procedure for a petition to compel arbitration (Code Civ. Proc., §§ 1281-1281.8) require that the plaintiff's allegations be set out in *declarations* in opposition to the petition. (*Strotz, supra,* 223 Cal.App.3d at p. 219, fn. 10.) Similarly, in *Ford* v. *Shearson Lehman American Express, Inc., supra,* the court stated: "The issue tendered by the parties below was a question of law, *viz.,* whether *the allegations of the complaint* raised the issue[] that" the arbitration clause should not be enforced because of fraud. (180 Cal.App.3d at p. 1026, italics added.) Thus, in California the courts have held that mere allegations unsupported by evidence are sufficient to trigger a judicial determination of the fraud issue.

Nevertheless, Dean Witter points to lower federal court opinions which seem to hold that some evidentiary showing is required to obtain the jury

trial contemplated by section 4 of the Act. (*Manning* v. *Energy Conversion Devices, Inc.* (2d Cir. 1987) 833 F.2d 1096, 1103; *Saturday Evening Post Co.* v. *Rumbleseat Press, Inc.* (7th Cir. 1987) 816 F.2d 1191, 1196.) However, we are not bound by lower federal court opinions, even on questions of federal law. (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 830 [171 Cal.Rptr. 604, 623 P.2d 165]; *People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].)

Moreover, even if we were to follow the cited federal authorities, Mrs. Rice did present "evidence" of her allegations and, as the trial court found, raised a triable issue of fact concerning fraud. The facts related in this opinion are all based on the *verified* complaint filed by Mrs. Rice. A verified complaint "is prima facie evidence of the facts stated therein." (Code Civ. Proc., §§ 2011, 2009.) Thus, the trial court correctly observed that Mrs. Rice had raised a triable issue of fact on the issue of fraud.

D. *The Petition to Compel Arbitration on the Cross-complaint.*

Dean Witter next contends the trial court erred when it denied the petition to compel arbitration on Reinhold's cross-complaint. This petition was filed after the trial court had denied the previous petition to compel arbitration as to Mrs. Rice.

■ Although Reinhold filed a written (albeit untimely) opposition to Dean Witter's petition to compel arbitration on the cross-complaint, he has not filed a respondent's brief on appeal. Mrs. Rice, however, has shouldered the burden and has responded to this issue in *her* brief. Dean Witter contends we must ignore her arguments because Mrs. Rice does not have "standing" to assert them on appeal. We disagree. Since Reinhold has chosen not to file a brief, the appeal with respect to him is governed by rule 17(b) of the California Rules of Court. We follow the "better rule" in this situation, which requires that we examine the record on the basis of the appellant's brief and reverse only if prejudicial error is found. (*Votaw Precision Tool Co.* v. *Air Canada* (1976) 60 Cal.App.3d 52, 55 [131 Cal.Rptr. 335].) Consequently, even if Mrs. Rice does not have technical "standing" to address the cross-complaint on appeal—a point we do not concede—we nevertheless believe we may look to her brief to help us determine if there is reversible error.

Dean Witter's petition to compel arbitration on Reinhold's cross-complaint is essentially identical to its petition to compel arbitration as to Mrs. Rice, except that the former petition alleges Reinhold was acting as an agent for Mrs. Rice. The trial court denied the petition to compel arbitration as to the cross-complaint and ordered Dean Witter and its attorneys to pay $750 to

Mrs. Rice as a sanction for filing a frivolous motion. The court deemed the motion frivolous because it had already denied a similar petition with respect to the complaint. In addition, the court denied Dean Witter's alternative request for a stay of proceedings on the cross-complaint. (Code Civ. Proc., § 1281.4.)

Dean Witter contends the court was required to grant the petition to compel arbitration as to the cross-complaint because Reinhold failed to file a timely response. Dean Witter relies on Code of Civil Procedure, section 1290 which states that the *allegations* of a petition to compel arbitration "are deemed to be admitted by a respondent duly served therewith unless a response is *duly* served and filed." (Italics added.) Even assuming *Reinhold* admitted the allegations in the petition to compel arbitration by filing a tardy response, this does not mean the trial court was required to grant the petition. Reduced to its essence, the second petition to compel arbitration merely alleged that: (1) Mrs. Rice signed a customer's agreement with Dean Witter which contained an arbitration clause; (2) Reinhold acted as an agent for Mrs. Rice in this transaction; and (3) a controversy arising out of the Customer's Agreement arose between Mrs. Rice and Dean Witter.

However, even if all of these allegations were true, they did not determine the essential issue before the court: whether the agreement between *Dean Witter and Mrs. Rice* was enforceable or was vitiated by fraud. It would have been inconsistent, illogical, and a procedural nightmare for the court to, on the one hand, have set a jury trial on the question of whether the agreement (including the arbitration provision) between Mrs. Rice and Dean Witter was vitiated by fraud, and, on the other hand, to order Reinhold and Dean Witter to arbitrate their dispute which arose out of the very same agreement.

Nevertheless, we agree with Dean Witter that the trial court should have stayed proceedings on the cross-complaint until the issue of arbitrability is determined as to Mrs. Rice. Code of Civil Procedure section 1281.4 provides: "If an application has been made to a court of competent jurisdiction . . . for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined . . . ."

Here, Dean Witter's application for an order to compel arbitration as to Mrs. Rice is "undetermined"; the court must still hold a trial on the issue of fraud before it can finally deny that application. Moreover, the cross-

complaint is part of the "action or proceeding" to which this petition for arbitration relates. Thus, the trial court should have granted Dean Witter's request to stay proceedings on the cross-complaint until the petition to compel arbitration as to Mrs. Rice is determined.

### E. *The Sanctions Award.*

Dean Witter next contends that, even if the trial court properly denied the petition to compel arbitration on the cross-complaint, this court must nevertheless reverse the trial court's order imposing sanctions on Dean Witter for filing a frivolous motion. In light of our holding that the trial court should have granted Dean Witter's alternative request to stay proceedings, we agree and reverse the order.

■ Code of Civil Procedure section 128.5 provides that a trial court may order a party and his or her attorney "to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ." For the purposes of this section, "frivolous" means "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b)(2).)

On appeal, the reviewing court may not independently examine the record to determine if the appellant's motion is frivolous. If the facts merely afford an opportunity for different opinions, the order must be affirmed. " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal . . . it must clearly appear that the injury resulting from [the imposition of sanctions] is sufficiently grave to amount to a manifest miscarriage of justice; . . .' [Citation.]" (*Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1175-1176 [230 Cal.Rptr. 289], italics omitted; *580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 19-20 [272 Cal.Rptr. 227].)

In light of our finding that the trial court should have granted the alternative request to stay proceedings, we believe the trial court abused its discretion when it determined that the motion was "totally and completely without merit" or "for the sole purpose of harassing an opposing party." This is not a case which "merely affords an opportunity for different opinions." To the contrary, we have found that the trial court was required by law to grant the alternative relief requested in the motion to compel arbitration: namely, a stay of proceedings on the cross-complaint pursuant to Code of

Civil Procedure section 1281.4. In these circumstances, the sanctions order must fall.[5]

F. *Sanctions on Appeal.*

Finally, we consider whether Mrs. Rice is entitled to sanctions on appeal. Although this is a close case, we decline to impose sanctions.

A reviewing court may impose sanctions when it concludes an appeal is frivolous or taken solely for delay. (Code. Civ. Proc., § 907; Cal. Rules of Court, rules 26(a) and 135(a).)

In *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] our Supreme Court held that an appeal may be frivolous under either a subjective standard which examines the motive of the appellant and his counsel or an objective standard which focuses on the merits of the appeal. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*Id.*, at p. 650; *Zimmerman v. Drexel Burnham Lambert Inc.* (1988) 205 Cal.App.3d 153, 163 [252 Cal.Rptr. 115].)

In light of our modification of the judgment to impose a stay on the cross-claims and reversal of the previous sanctions order, we would be hard-pressed to say that the appeal is "totally and completely without merit." Moreover, although some of Dean Witter's points are very weak, others did warrant careful consideration. Consequently, we cannot say that a "*significant* and *material* part" of the appeal was frivolous from an objective viewpoint. (*Maple Properties v. Harris* (1984) 158 Cal.App.3d 997, 1010 [205 Cal.Rptr. 532].) Nor is there compelling evidence that the appeal was taken for the purpose of harassment or delay.

Consequently, we decline the request to impose monetary sanctions; however, in exercise of our inherent authority to make any award of costs we deem appropriate, we award costs on appeal to Mrs. Rice. (Cal. Rules of Court, rule 26(a).)

G. *Disposition.*

The order imposing sanctions for filing a frivolous motion is reversed, and the February 19, 1991, order denying petition to compel arbitration is

---

[5]We believe the sanctions order is reviewable on appeal even though the amount imposed does not exceed $750. (Code Civ. Proc., § 904.1, subd. (k).) This is because the sanctions order may be reviewed as part of the appeal from the orders denying arbitration, which are properly before us. (Code Civ. Proc., § 1294, subd. (a).)

modified to impose a stay on the trial court proceedings on the cross-complaint. (Code Civ. Proc., § 1281.4.) In all other respects the orders appealed from are affirmed.

Costs are awarded to respondent Rice only, payable by appellants.

Merrill, J., and Strankman, J.,* concurred.

A petition for a rehearing was denied December 2, 1991, and appellants' petition for review by the Supreme Court was denied February 11, 1992. Panelli, J., was of the opinion that the petition should be granted.

---

*Presiding Justice of the Court of Appeal, First District, Division One, sitting under assignment by the Chairperson of the Judicial Council.