[Nos. B065198, B066610. Second Dist., Div. Six. Sept. 2, 1993.]

ROBERT A. LYNCH et al., Plaintiffs and Respondents, v. CRUTTENDEN & COMPANY et al., Defendants and Appellants.

## COUNSEL

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Gilbert R. Serota, John M. Chaisson, Keesal, Young & Logan, Dawn M. Schock and John R. Loftus for Defendants and Appellants.

Goldenring and Goldenring and Peter A. Goldenring for Plaintiffs and Respondents.

## OPINION

**GILBERT, Acting P. J.**—This consolidated appeal concerns the denial of two motions to compel arbitration made in the same case. We hold that the plaintiffs' allegations of fraud are sufficient to support the denial of the motions, and that the denial does not conflict with *Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801].

### FACTS

Robert and Betty Lynch filed an action against Cruttenden & Company, Talley McNeil & Company, Robert C. Carty (hereinafter collectively Cruttenden) and Sutro & Co. The complaint alleged that Carty, a licensed securities broker, acted as the agent of and in conspiracy with Cruttenden and Sutro, licensed brokerage houses, to defraud the Lynches by taking excessive fees.

The complaint states that the Lynches became personal friends of Carty in 1989. Carty encouraged them to have trust and confidence in him and to rely on him for financial advice. The Lynches opened accounts with Cruttenden and Sutro through Carty and transferred money to the defendants. Carty instructed the Lynches to sign various documents from time to time. He told the Lynches the documents were ". . . necessary to effect the continuing reliance and trust by [the Lynches in Carty and the other defendants], and that the documents did not affect legal rights and it was not necessary that they be read." The Lynches also alleged Carty told them the documents were necessary to open accounts and were only a formality. The Lynches claimed they were not advised of the contents of the documents and were not provided ". . . any substantial opportunity to read" them.

Cruttenden and Sutro responded by making separate motions to compel arbitration. Attached to the moving papers were various documents purportedly signed by the Lynches. The documents contained arbitration clauses in bold type requiring the parties to submit disputes to arbitration before the National Association of Securities Dealers, Inc., or the New York Stock Exchange.

The Lynches filed affidavits in opposition to the motions. Robert Lynch declared that he attended school only to the ninth grade. Prior to meeting Carty he never had a securities account and never executed stockbroker or brokerage house agreements. Lynch first met Carty in 1988. Carty manipulated Lynch into believing Carty was a very close friend and confidante. At the beginning Carty did not mention managing Lynch's money, but spent considerable time befriending him, visiting him at his home or office as often as twice a week. In the course of the developing friendship Lynch told Carty that he owned a cement business he built from scratch. Lynch said that he was considering selling the business and investing the proceeds for retirement and for his children.

Eventually the Lynches sold the business for $5 million. They wanted to invest what remained after taxes and Carty asked the Lynches to allow him to manage the funds. Lynch said he had no experience with stocks. Carty told Lynch repeatedly that he should trust him and rely on his expertise and management skills.

Carty told Lynch that documents he was asked to sign were "standard" and a "formality." Carty specifically discouraged Lynch from reading the documents, repeatedly referring to their friendship and the level of trust that had developed. At no time was Lynch told that the documents were contracts or that they contained an arbitration clause or otherwise limited his rights.

Lynch declared that as a result of churning and mismanagement by Carty and the other defendants, the Lynches' funds have been reduced by well over half while defendants earned approximately $1 million in commissions. An affidavit submitted by Betty Lynch affirmed her husband's declarations.

The trial court separately denied each motion and the moving parties appealed.

DISCUSSION

I.

Our task on appeal is simply to determine whether the plaintiffs have alleged in their complaint and affidavits sufficient facts to warrant a trial on

the validity of the arbitration agreement. (See *Strotz* v. *Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 211, fn. 2 [272 Cal.Rptr. 680].)

■ The Federal Arbitration Act provides that a written arbitration provision in a contract involving commerce is valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) Of course, it is well recognized that fraud may be a ground for the revocation of a contract. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 392, p. 356; Rest.2d Contracts, § 7 com. b, at p. 22.)

■ Cruttenden and Sutro contend, however, that none of the statements alleged to have been made by Carty were false. Carty was alleged to have represented that the documents were standard, a formality and did not affect the rights of the Lynches. It may be true that the documents were standard, but it is untrue that the documents were a formality and that they did not affect the Lynches' rights.

If the agreements are enforceable, the Lynches have waived their right to a jury trial, limited their discovery rights, and waived their right to appeal. It is anomalous for Cruttenden and Sutro to argue on appeal they are trying to enforce an agreement against the Lynches, and to also argue the agreement is a formality and does not affect the Lynches' rights.

Cruttenden and Sutro claim the Lynches may not rely on their own failure to read the agreements. However, California cases have consistently taken the position that where a plaintiff is unfamiliar with the nature of the documents used in the stockbrokerage business and is deceived as to the nature and effect of the documents, failure to read the documents is excusable. (See *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 30-33 [136 Cal.Rptr. 378]; *Strotz* v. *Dean Witter Reynolds, Inc., supra,* 223 Cal.App.3d 208, 218-219; *Rice* v. *Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1025-1026 [1 Cal.Rptr.2d 265].) ■ The general rule in California is that even in the absence of a fiduciary relationship plaintiff's failure to read a contract is excusable where reliance is placed on the misrepresentations of the other party. (1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 407, p. 366.) The Restatement of Contracts Second adopts a similar position. (See Rest.2d Contracts, § 177.)

■ Our recent decision in *Rowland* v. *PaineWebber Inc.* (1992) 4 Cal.App.4th 279 [6 Cal.Rptr.2d 20] is not to the contrary. There, Rowland was a former securities broker and employee of PaineWebber, and "[p]resumably, he was familiar with all industry contract terms necessary to open an investment account." (*Id.* at p. 286.) Here, the representation that the

documents did not affect the Lynches' rights is equivalent to a representation that the documents are not contracts, a deception as to the nature and effect of the documents.

Cruttenden and Sutro stated at oral argument that the Lynches never alleged they did not know they were signing contracts. But the Lynches alleged they were ignorant of the falsity of Carty's representations and believed them to be true. The Lynches could not have believed Carty's representation that the documents would not affect their legal rights, and also have known they were signing contracts.

■ As to Carty's status as a nonlawyer, a person may be found to have reasonably relied on the legal opinion of a nonlawyer where the recipient of the opinion is in a relationship of trust and confidence, or where the recipient of the opinion reasonably believes that, as compared with himself, the maker of the opinion has special knowledge or skill with respect to the subject matter. (Rest.2d, Contracts, §§ 169, 170; and com. b to § 170 [reliance may be reasonable where, e.g., a real estate broker or insurance agent gives an opinion of law on a routine matter within his competence to a layman]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, §§ 680, 682, 684, pp. 781-782, 784, 785.) ■ The Lynches' allegations are sufficient to bring them within either of these circumstances.

Cruttenden and Sutro's reliance on *Cohen v. Wedbush, Noble, Cooke, Inc.* (9th Cir. 1988) 841 F.2d 282 is misplaced. There, the Cohens signed a margin account agreement containing an arbitration clause. In response to Wedbush's motion to compel arbitration the Cohens alleged that Wedbush did not explain the meaning and effect of the arbitration clause. The court held: "We know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract. We decline to impose such an obligation . . . ." (*Id.* at p. 287.)

In response to the Cohens' allegation that they were advised " '. . . either expressly or implicitly . . .' " that the agreement did not compromise any of their rights, the court replied, "Even assuming the dubious proposition that an 'implicit' statement by a non-lawyer regarding a question of law can constitute fraud, the alleged statement here cannot fairly be characterized as fraud in the inducement as to the *arbitration* clause." (*Cohen v. Wedbush, Noble, Cooke, Inc.*, *supra*, 841 F.2d 282, 287.)

The court also said that even assuming the alleged statements were specifically directed to the arbitration clause there was no fraud because reliance on a misrepresentation is not reasonable when plaintiff could have

ascertained the truth by reading the contract. (*Cohen* v. *Wedbush, Noble, Cooke, Inc., supra,* 841 F.2d 282, 287.)

In *Cohen* the court assumed the parties were dealing at arm's length. The case did not discuss whether Wedbush was acting in a fiduciary capacity. A fiduciary relationship is created where a person reposes trust and confidence in another and the person in whom such confidence is reposed obtains control over the other person's affairs. (*Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1020 [225 Cal.Rptr. 895].) Here the Lynches allege that Carty obtained control over their funds through the trust and confidence they reposed in him as a friend and a purported expert in investments. The Lynches also alleged that Carty was acting as the agent of Cruttenden and Sutro. This is sufficient to allege that the defendants were acting in a fiduciary capacity.

Second, as we will discuss below, we fail to see why a representation that signing a document will not affect the Lynches rights, cannot fairly be characterized as fraud going directly as to the arbitration clause, a clause that clearly affects the Lynches' rights.

Third, in stating there could be no fraud if the plaintiffs did not read the contract, the *Cohen* court ignored California authority and the Restatement, which are to the contrary.

## II.

 Cruttenden and Sutro next contend that even if the elements of fraud are sufficiently alleged, arbitration is required under *Prima Paint* v. *Flood & Conklin, supra,* 388 U.S. 395.

Prima Paint contracted to buy F & C's business. The parties also contracted that F & C would serve as a consultant to Prima Paint for six years. The consulting agreement contained an arbitration clause. No reference was made in the agreements to possible financial problems which F & C might encounter. Shortly after the first payment was due under the consulting agreement, Prima Paint notified F & C's attorney that their client had fraudulently represented it was solvent and able to perform its contractual obligations, whereas it was insolvent and intended to file a petition in bankruptcy. Prima Paint filed suit for recision on the ground of fraud in the inducement. F & C sought to stay the court proceeding pending arbitration.

In upholding the order staying proceedings pending arbitration, the court pointed out that there was a conflict in the federal courts of appeals over

whether ". . . arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are imbedded . . . ." (*Prima Paint* v. *Flood & Conklin, supra,* 388 U.S. 395, 402 [18 L.Ed.2d 1270, 1276].) If separable, the arbitration clause is broad enough to encompass claims of fraud ". . . where no claim is made that fraud was directed to the arbitration clause itself . . . ." (*Ibid.*)

The Supreme Court held the answer was to be found in section 4 of the Federal Arbitration Act. "Under § 4, . . . the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (*Prima Paint* v. *Flood & Conklin, supra,* 388 U.S. at pp. 403-404 [18 L.Ed.2d at p. 1277], fns. omitted.)

Cruttenden and Sutro argue that here the claim of fraud goes to the inducement of the contract generally, and does not go to the making of the agreement for arbitration. We disagree. The alleged representation that the documents were a formality and did not affect the rights of the Lynches, was tantamount to a representation that the documents contained no arbitration clause. Because the representation is in direct conflict with the existence of an arbitration clause, the making of the agreement for arbitration is in issue and the court has no power to order arbitration under section 4 of the Federal Arbitration Act.

■ That the misrepresentation may go to some or even all of the clauses of the contract as well as the arbitration clause does not mean that fraud in the making of the agreement for arbitration is not in issue. *Prima Paint* does not stand for the proposition that a fraudulently induced arbitration agreement becomes valid and enforceable if the fraud also goes to other parts of the contract. *Prima Paint* simply interpreted section 4 of the Federal Arbitration Act as requiring the arbitration provision of the contract to be treated as a separate agreement for the purpose of determining whether it is enforceable.

■ The fraud alleged in *Prima Paint* concerned misrepresentation of a party's financial condition. In contrast to the instant case there was no allegation in *Prima Paint* that a party was misled as to the existence or effect of the arbitration clause. Here, it is alleged the parties were misled as to the very existence of the arbitration clause. In *Prima Paint* the fraud went to the making of the contract generally, not to the making of the arbitration clause.

California cases are unanimous in holding that *Prima Paint* does not require arbitration where, as alleged here, the plaintiffs were so deceived they did not understand they were contracting. (*Ford* v. *Shearson Lehman American Express, Inc.*, *supra*, 180 Cal.App.3d at pp. 1015, 1028-1029; *Strotz* v. *Dean Witter Reynolds, Inc.*, *supra*, 223 Cal.App.3d 208, 217; *Rice* v. *Dean Witter Reynolds, Inc.*, *supra*, 235 Cal.App.3d 1016, 1023; compare, *Rowland* v. *PaineWebber Inc.*, *supra*, 4 Cal.App.4th 279, where plaintiff, a retired stockbroker, could not have been so deceived.) Such a fraud necessarily raises issues that go directly to the making of the agreement to arbitrate. Thus under section 4 of the Federal Arbitration Act the court may not order arbitration unless those issues are resolved in court against the plaintiffs.

Cruttenden and Sutro seek to distinguish *Ford*, *Strotz* and *Rice* on the ground that in those cases the defendants exerted complete dominion and control over the plaintiffs' affairs. But we know of no requirement that plaintiffs allege complete dominion or control in order to sustain an allegation of fraud. We agree with the trial court judges. The allegations in the instant case are sufficient.

The orders denying the defendants' motions for arbitration are affirmed. Costs on appeal are awarded to the Lynches.

Yegan, J., and Willard, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied December 16, 1993.

---

*Retired judge of the Ventura Superior Court sitting under assignment by the Chairperson of the Judicial Council.