[No. H013943. Sixth Dist. May 31, 1996.]

JOHNETTA BROOKWOOD, Plaintiff and Appellant, v.
BANK OF AMERICA, NATIONAL TRUST AND SAVINGS
ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Alexander H. Singleton and Ronald A. Peters for Plaintiff and Appellant.

Payne & Fears, Karen O. Strauss and Jay J. Price for Defendants and Respondents.

OPINION

**PREMO, Acting P. J.**—Plaintiff Johnetta Brookwood sued her former employers defendants Bank of America NT & SA, a California corporation (hereafter, Bank), BA Investment Services, Inc., a California corporation (hereafter, BAIS),[1] and Robert Goldman for wrongful termination (sex discrimination) contrary to California's Fair Employment and Housing Act. (Gov. Code, § 12900 et seq.) Defendants filed a petition to compel arbitration on the ground that a written agreement to arbitrate existed. (Code Civ. Proc., § 1281.2.) Plaintiff opposed the petition by arguing that (1) she did not knowingly agree to submit her claims to arbitration, and (2) no agreement to arbitrate with Bank existed in any event. The trial court granted the petition, and plaintiff appeals from the order. We affirm.

SCOPE OF REVIEW

■ In California the issue of the validity of an arbitration agreement "is determined upon a petition to compel arbitration." (*Strauch* v. *Eyring* (1994) 30 Cal.App.4th 181, 185-186 [35 Cal.Rptr.2d 747].) "A petition to compel arbitration is to be heard in the manner of a motion. [Citation.] Factual issues on motions are submitted on affidavits or declarations (or oral testimony in the court's discretion). [Citations.]" (*Id.* at p. 184.)

■ Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court. (*Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105 [186 Cal.Rptr. 740].) Here, no conflicting extrinsic evidence in aid of interpretation was introduced.

■ "The fundamental canon of interpreting written instruments is the ascertainment of the intent of the parties. [Citations.] As a rule, the language of an instrument must govern its interpretation if the language is clear and

---

[1]According to BAIS's business letterhead, BAIS was "A BankAmerica Company."

explicit." (*Ticor Title Ins. Co. v. Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726, 730 [223 Cal.Rptr. 175].)

The parties agree that this case is governed by the Federal Arbitration Act (9 U.S.C.A. § 1 et seq.; hereafter, the Act). ▮ "Generally, under the Act, arbitration is strongly favored, and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .' [Citations.]" (*Rice v. Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1023 [1 Cal.Rptr.2d 265].) California also has a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Strauch v. Eyring, supra*, 30 Cal.App.4th at p. 186.) The California Supreme Court has "warned against 'procedural gamesmanship' aimed at undermining the advantages of arbitration. [Citation.]" (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251].)

The Act "provides that a written arbitration provision in a contract involving commerce is valid and enforceable 'save upon such grounds as exist at law or in equity for the revocation of any contract.' [Citation.]" (*Lynch v. Cruttenden & Co.* (1993) 18 Cal.App.4th 802, 807 [22 Cal.Rptr.2d 636].) " '[S]tate law, whether of legislative or judicial origin, is applicable [to arbitration clauses] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' [Citations.]" (*Rice v. Dean Witter Reynolds, Inc., supra*, 235 Cal.App.3d at p. 1023.)

California law states: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.)

### BACKGROUND

Bank and BAIS hired plaintiff as an investment specialist to promote and sell BAIS's services regarding mutual funds, stocks, and bonds to Bank's clients. Bank also hired plaintiff to sell its annuities generally.

Plaintiff signed a registered representative agreement with BAIS which required her to be a registered representative "appropriately licensed under the rules and regulations of the National Association of Securities Dealers, Inc. ('NASD'), the New York Stock Exchange, Inc. ('NYSE'), the Securities and Exchange Commission and applicable state securities regulatory agencies . . . ." The agreement stated that plaintiff was "dually employed by [Bank] pursuant to an additional employment agreement" and required to

hold herself out to customers "in a manner designed to clearly identify when [she was] representing BAIS and when [she was representing Bank]." It also provided: "[Y]ou will strictly adhere to the Rules of Fair Practice and other requirements of the NASD, as set forth in the NASD Manual, and to the Constitution, Rules and other requirements of the NYSE, copies of which will be maintained by BAIS for your reference."[2] The agreement specifically stated: "You agree that any dispute, controversy or claim relating to this Agreement, or its breach, shall be settled by arbitration under applicable NASD and NYSE rules."

In addition, plaintiff transferred her existing NASD registration from her former employer to BAIS by executing a Uniform Application for Securities Industry Registration or Transfer, commonly known as the U-4 form. At the top of the signature page, the U-4 form states in bold type: "THE APPLI-CANT MUST READ THE FOLLOWING VERY CAREFULLY." Below this, in paragraph 5, the form provides: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction."[3]

On the same day that plaintiff signed the registered representative agreement, she signed an employment agreement for salaried employees with Bank. This agreement generally acknowledges plaintiff's dual employment, provides that it "also applies to [plaintiff's] employment with BAIS," states that Bank or BAIS may terminate the employment at any time with or without cause, and allows that a termination by BAIS automatically termi-nates plaintiff's employment by Bank unless Bank determines otherwise.

### PLAINTIFF'S DEFENSE

Plaintiff's declaration in opposition to defendants' petition generally stated that she was not aware that the registered representative agreement and U-4 form contained arbitration clauses.

### DISCUSSION

■ A statutory cause of action for wrongful termination due to age discrimination is subject to compulsory arbitration under the terms of a U-4

---

[2] The National Association of Securities Dealers, Inc. (NASD) Code of Arbitration Proce-dure generally requires that any dispute between members arising in connection with the business or activities of a member be arbitrated.

[3] The organizations indicated in item 10 of the U-4 form were the NASD, New York Stock Exchange, and the State of California.

form alone. (*Gilmer* v. *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 23 [114 L.Ed.2d 26, 35, 111 S.Ct. 1647].)

The court in *Spellman* v. *Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452 [10 Cal.Rptr.2d 427], applied *Gilmer* in reversing an order denying a petition for arbitration. At issue in *Spellman* was a claim under the Fair Employment and Housing Act for wrongful termination due to racial discrimination. The plaintiff in *Spellman* had signed an employment agreement containing an arbitration clause and the U-4 form.

██ Plaintiff's position is, of necessity, that a ground for revocation of contract is unilateral lack of understanding. She cites no state law for such a proposition.[4] Her sole authority is *Prudential Ins. Co. of America* v. *Lai* (9th Cir. 1994) 42 F.3d 1299.

"In *Lai*, the court analyzed a provision of the Civil Rights Act of 1991 which states that '[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title. . . .' [Citation.] Despite this seemingly express Congressional endorsement of arbitration of Title VII claims, the Ninth Circuit, relying on a passage from a single committee report from the House of Representatives and a statement by Senator Robert Dole, held that Congress intended that Title VII claims could be arbitrated 'only when such a procedure was *knowingly accepted.*' [Citation.]" (*Maye* v. *Smith Barney Inc.* (S.D.N.Y. 1995) 897 F.Supp 100, 107, italics added.)[5]

*Lai*'s unfortunate choice of the words "knowingly accepted" is what gives life to plaintiff's position. Without any basis, plaintiff seizes upon the words and claims that they mean something more than "accepted" in the sense that any enforceable contract is "accepted." She can, so the argument goes, rescind a contract simply by proving her unilateral ignorance of the contractual terms.

██ ██ Plaintiff's position turns contract law on its head. California law allows rescission of contract for a unilateral mistake only "when the

---

[4]"Civil Code section 1689 provides that a party to a contract may rescind the contract if his consent was given by mistake or fraud exercised by or with the connivance of the party as to whom he rescinds . . . ." (*Merced County Mut. Fire Ins. Co.* v. *State of California* (1991) 233 Cal.App.3d 765, 771 [284 Cal.Rptr. 680].) In other words, "rescission is available for a unilateral mistake, when the unilateral mistake is known to the other contracting party and is encouraged or fostered by that party." (*Id.* at p. 772.) This case does not involve such a fact pattern.

[5]"The reasoning of *Lai* has been criticized by courts in this and other Circuits as contrary to Supreme Court precedent and as based on citation of inadequate legislative history." (*Maye* v. *Smith Barney Inc., supra*, 897 F.Supp. at p. 107.)

unilateral mistake is known to the other contracting party and is encouraged or fostered by that party." (*Merced County Mut. Fire Ins. Co.* v. *State of California, supra,* 233 Cal.App.3d 765, 772.) "No law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract, particularly where, as here, the language of the contract expressly and plainly provides for the arbitration of disputes arising out of the contractual relationship. [Citation.] Reliance on an alleged misrepresentation [or, by extension of reasoning, a unilateral mistake not encouraged or fostered by the other party,] is not reasonable when plaintiff could have ascertained the truth through the exercise of reasonable diligence. [Citation.] Reasonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement. [Citation.]" (*Rowland* v. *PaineWebber Inc.* (1992) 4 Cal.App.4th 279, 286 [6 Cal.Rptr.2d 20].)

Hence, plaintiff was "bound by the provisions of the [arbitration] agreement regardless of whether [she] read it or [was] aware of the arbitration clause when [she] signed the document. [Citation.]" (*Macaulay* v. *Norlander* (1992) 12 Cal.App.4th 1, 6 [15 Cal.Rptr.2d 204].)

Plaintiff counters that California courts do not have authority to create a standard for arbitration that differs from federal law. We are therefore bound by *Lai,* so the argument goes, despite its seeming divergence from state law principles for revocation of contract.

We disagree, however, that *Lai* must be interpreted as making the revolutionary change in contract law that plaintiff accepts as a matter of fact.

In deciding the issue at hand, the *Lai* court did not open the door for extrinsic evidence of subjective intent inconsistent with the written words of a contract. It made a narrow decision, confined to the four corners of the contracts in question: ". . . the court held that since [the U-4 forms] did not describe the types of disputes that were to be subject to arbitration they could not constitute knowing acceptance of arbitration for Title VII claims. [Citation.] Likewise, the arbitration agreements that the *Lai* plaintiffs signed with [NASD] were insufficient because the arbitration clause in the NASD Manual did not refer to employment disputes." (*Maye* v. *Smith Barney Inc., supra,* 897 F.Supp. at p. 107.)

Here, there is no question that the applicable clauses, being broad in scope, apply to plaintiff's causes of action. (*Spellman* v. *Securities, Annuities & Ins. Services, Inc., supra,* 8 Cal.App.4th at pp. 464-465.)

In any event, *Lai* is inconsistent with United States Supreme Court authority to the extent that it purports to create a federal contractual standard

for arbitration clauses. (*Perry* v. *Thomas* (1987) 482 U.S. 483, 493, fn. 9 [96 L.Ed.2d 426, 437, 107 S.Ct. 2520] ["Thus state law, whether of legislative or judicial origin, is applicable [to arbitration clauses] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."].)

As a fallback position, plaintiff argues that there is no arbitration clause in the employment agreement with Bank in any event. And she relies upon the integration clause of that contract which states: "This Employment Agreement is the complete agreement between the Bank and me, and takes the place of all prior oral and/or written agreements concerning the conditions, nature, tenure, and/or duration of my employment relationship with the Bank. Any and all such prior oral and/or written agreements are invalid, except any specific provisions set forth in prior written agreements stating my compensation and/or benefits."

Plaintiff's analysis is erroneous.

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.) Whether Civil Code section 1642 applies in a particular case is a question of fact for resolution by the trial court. (*Cadigan* v. *American Trust Co.* (1955) 131 Cal.App.2d 780, 786 [281 P.2d 332].)

Thus, in order to prevail before us, plaintiff must demonstrate that there is no substantial evidence to support the trial court's implicit finding that Bank's contract, BAIS's contract, and the U-4 form, were substantially one transaction and should be taken together. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].)[6]

Plaintiff, however, fails to make a proper appellate argument. She cites the evidence favorable to her and ignores that in support of the judgment.

It is sufficient to note that Bank and BAIS are related companies that hired plaintiff at the same time in a dual capacity with principal responsibilities that required a securities registration. This evidence supports a finding that the employment agreement for salaried employees, registered representative

---

[6]We are without power to substitute our deductions for those of the trial court. In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party and in support of the judgment. We look only at the evidence supporting the successful party and disregard the contrary showing. All conflicts must therefore be resolved in favor of the prevailing party below. (*Campbell* v. *Southern Pacific Co., supra,* 22 Cal.3d at p. 60.)

agreement, and U-4 form, were parts of substantially one transaction and should be taken as one. Thus, the arbitration covenant in the Registered representative agreement, U-4 form, and incorporated NASD provisions ran between plaintiff and Bank notwithstanding there was no specific arbitration provision in the employment agreement for salaried employees.

## DISPOSITION

The order granting defendants' motion to compel arbitration is affirmed.

Elia, J., and Wunderlich, J., concurred.