Filed 4/3/13  Tostado v. Rehabbers Financial CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TERESA TOSTADO et al., | B240628 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. GC047462) |
| v. | |
| REHABBERS FINANCIAL, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Affirmed in part and reversed in part.

The Business Legal Group and Russell M. Frandsen for Plaintiffs and Appellants Teresa Tostado and Roberto Tostado.

Bruce B. Paller for Defendant and Respondent Rehabbers Financial, Inc.

_____

Plaintiffs Teresa Tostado and Robert Tostado obtained a loan from Rehabbers Financial, Inc., dba Aztec Financial (Aztec) to construct a home on a vacant lot for Teresa Tostado's mother. Plaintiffs claim that Aztec failed to disclose to them several material terms of the loan and filed this action asserting claims for violations of the Truth in Lending Act (15 U.S.C. § 1601 et seq.) (TILA) and other California statutory and common law provisions. The trial court sustained Aztec's demurrer on statute of limitations and substantive grounds. We reverse on plaintiffs' claims for violations of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) (Rosenthal Act) and Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL), breach of the implied covenant of good faith and fair dealing, and declaratory relief, and affirm on the remaining claims.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *Plaintiffs' First Amended Complaint*

Plaintiffs' operative first amended complaint (complaint), filed December 20, 2011, alleged that plaintiffs owned an unencumbered vacant lot in South Pasadena. In September 2006, plaintiffs and Aztec entered into a loan agreement for $475,000 secured by a deed of trust for the purpose of permitting plaintiffs to build a house on the lot for Teresa Tostado's mother to live in.[1]

Plaintiffs contended that Aztec deceived them about the nature of the loan in several respects. When plaintiffs entered into the loan with Aztec, they claim Aztec told them that they would pay only interest on loan amounts that were drawn down for construction. In addition, plaintiffs repeatedly told Aztec that the loan was to construct their residence, but in reality, the loan was a commercial loan: Aztec falsely and fraudulently included in the loan papers a document stating that the property was non-owner occupied investment property and told plaintiffs not to worry about the document

---

[1] The loan documents were not attached to the complaint. A written contract may be pleaded "word for word" or generally according to "its legal intendment and effect." (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198–199.)

because it was "'just a document the lender needs.'" By so doing, Aztec intended to have plaintiff fraudulently waive their rights under TILA, which does not apply to commercial loans. Further, Aztec falsely told plaintiffs that it was charging them the lowest rate, telling plaintiffs that all construction loans were higher-interest rate loans.

On September 9, 2010, when Aztec filed a notice of default and election to sell, plaintiffs discovered that their loan was not subject to TILA.[2] In the fall of 2009, Aztec began calling plaintiffs about payments due under the loan and stated that $620,000 was owed. Plaintiffs allege Aztec fraudulently added charges to the note and in October 2011, claimed that $800,000 was now due. Aztec repeatedly called plaintiffs and threatened to foreclose. Plaintiffs believed Aztec had made a mathematical error in calculating the interest owed, and tried to contact Aztec to get an explanation for the charges, but never received any explanation.

Plaintiffs alleged that Aztec's misrepresentations were discovered within the year before the filing of their complaint.

Plaintiffs first amended complaint alleged 11 claims for relief: violation of TILA; violations of the UCL; violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) (FDCPA); violations of the Rosenthal Act; negligence; breach of fiduciary duty (Civ. Code, § 2923.1); fraud; breach of the covenant of good faith and fair dealing; negligent infliction of emotional distress; intentional infliction of emotional distress; and declaratory relief.

Plaintiffs sought an injunction, damages, disgorgement, attorneys' fees and costs, punitive damages, and a declaration of the true amounts plaintiffs owed to Aztec.

2. *Aztec's Demurrer*

Aztec demurred to all causes of action on the basis they were barred by the applicable statutes of limitations and they did not state a claim for relief. Aztec argued that the loan originated in September 2006, but plaintiffs attempted to rely on the discovery rule by alleging Aztec's wrongdoings had only been discovered within the year

---

[2] The record does not disclose whether a foreclosure took place.

3

preceding the filing of the original complaint on June 1, 2011. However, plaintiffs did not show that they were unable to uncover Aztec's wrongdoing earlier despite exercising due diligence. Further, Aztec argued plaintiffs lacked standing due to the October 12, 2010 filing of their chapter 7 bankruptcy proceedings, and their claims were barred by judicial estoppel because they failed to list the lawsuit as an asset in their bankruptcy schedules. On the merits of plaintiffs' claims, Aztec argued (1) plaintiffs' claim under TILA was barred because TILA did not apply to commercial loans; (2) plaintiffs' claim for negligence failed because a lender does not owe a borrower a duty of care; (3) plaintiffs' claim for breach of fiduciary duty failed because a lender does not owe a borrower a duty of care; (4) plaintiffs' claim for negligent infliction of emotional distress failed because Aztec had no duty to plaintiffs; (5) plaintiffs' claim for intentional infliction of emotional distress failed because Aztec's conduct was not extreme or outrageous; (6) plaintiffs' claim for declaratory relief failed because it was duplicative of their other claims and plaintiffs had not tendered payment required on the defaulted loan.

### 3. *Plaintiffs' Opposition*

Plaintiffs argued in opposition that they were willing to pay amounts owed to Aztec, but that their action sought a determination of the amounts they were obligated to pay; their loan was to build a single-family residence and thus subject to TILA; Aztec misrepresented the interest rate, claiming it was the best rate available when in fact it was not; plaintiffs did not discover Aztec had failed to comply with TILA until the notice of default was recorded on September 9, 2010; statutes of limitations did not apply to actions for offset or recoupment under TILA; Aztec relied on facts not set forth in the complaint as a basis for demurrer; and plaintiffs amended their schedules to list the lawsuit, and the claim reverted to them upon the granting of their discharge in bankruptcy.[3] Plaintiffs asserted that Aztec's torts were continuing, and commenced with the initial violations of TILA, fraud in the inducement in entering into the loan,

---

[3] Plaintiffs received a bankruptcy discharge on April 6, 2011, prior to the filing of their initial complaint in this action.

continuing efforts to collect illegal interest rates, the sending of "dunning notices," sending of false loan statements, accruals of illegally imposed penalties, and the recordation of a notice of default and sale.

### 4. *Plaintiffs' Surreply*

Plaintiffs filed a surreply to Aztec's reply to their opposition to its demurrer in which it reasserted that Aztec's torts were continuing, plaintiffs did not discover Aztec's wrongdoing with the exercise of reasonable diligence, the loan was for a residence, not a business, and Aztec falsely claimed they could not exercise their right of setoff and recoupment.[4]

### 5. *Hearing on Demurrer; Plaintiffs' Posthearing Brief; Ruling*

The transcript of the hearing held March 6, 2012 on the demurrer is not part of the record. However, plaintiffs filed a posthearing brief to address what they believed was Aztec's misstatement of the law at the hearing regarding damages under TILA. Plaintiffs asserted that because double damages were available under title 15 United States Code section 1640(a)(2)(A)(i), plaintiffs were entitled to offset those damages against amounts Aztec claimed were owed. Further, such a claim for setoff would not be barred by the statute of limitations under title 15 United States Code section 1640(e). The trial court sustained the demurrer without leave to amend "for the reasons set forth in the moving papers." On April 2, 2012, Aztec filed a notice of ruling. Plaintiffs appeal the order sustaining the demurrer.[5]

---

[4] Aztec's reply is not part of the record.

[5] We treat the order as appealable, despite the absence of a judgment of dismissal. The general rule of appealability is that "[a]n order sustaining a demurrer without leave to amend is not appealable, and an appeal is proper only after entry of a dismissal on such an order." (*Sisemore v. Master Financial, Inc*. (2007) 151 Cal.App.4th 1386, 1396.) However, "'when the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that remains to make the order appealable is the formality of the entry of a dismissal order or judgment.'" Here, we accordingly deem the order on the demurrer to

5

**DISCUSSION**

## I. Standard of Review

"[T]he function of a demurrer is to test the sufficiency of a pleading as a matter of law," and "we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247; *Holiday Matinee, Inc. v. Rambus, Inc*. (2004) 118 Cal.App.4th 1413, 1420.)  A complaint "is sufficient if it alleges ultimate rather than evidentiary facts," but the plaintiff must set forth the essential facts of his or her case "'"'with reasonable precision and with particularity sufficient to acquaint [the] defendant with the nature, source, and extent'"'" of the plaintiff's claim.  Legal conclusions are insufficient.  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 & 551, fn. 5.)  "We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law."  The trial court errs in sustaining a demurrer "if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment." (*California Logistics, Inc.*, at p. 247.)

"Where a complaint shows on its face that the action is barred by the statute of limitations, a general demurrer for failure to state a cause of action will lie.  [Citations.]" (*Kendrick v. City of Eureka* (2000) 82 Cal.App.4th 364, 367–368.)  The running of the statute must appear "clearly and affirmatively" from the dates alleged; it is not enough that the complaint may be time-barred. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.)  To survive a demurrer on statute of limitations grounds where the facts pleaded disclose the action is time-barred, the plaintiff must plead facts showing that the statute does not apply based on the discovery rule. (*CAMSI IV v. Hunter Technology Corp*. (1991) 230 Cal.App.3d 1525, 1536.)  In particular, the plaintiff must

incorporate a judgment of dismissal and will review the order. (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527–528, fn.1.)

plead "the time and manner of discovery" and "the inability to have made earlier discovery despite reasonable diligence." (*Id*. at p. 1536.)

Generally, a limitations period begins to run "'upon the occurrence of the last fact essential to the cause of action.'" (*DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1017.) However, where a tort involves a continuing wrong, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192.)

## II.    **Plaintiffs' Claims**

The statutes of limitations applicable to plaintiffs' claims range from one to four years. We conclude that certain of plaintiffs' claims are time-barred, certain others fail to state a cause of action under the substantive law, and the trial court erred in reversing plaintiffs' claims for violation of the Rosenthal Act and UCL, and breach of the implied covenant of good faith and fair dealing and declaratory relief.

### A.    *TILA*

Plaintiffs' first cause of action alleged that Aztec breached TILA by failing to provide required disclosures in writing, failed to deliver required timely notices, failed to disclose all finance charge details, failed to disclose the annual percentage rate, failed to provide a good faith estimate or a consumer handbook on adjustable rate mortgages before the loan application. (15 U.S.C. §§ 1602(u), 1638(a), (b); 12 C.F.R. §§ 226.5(a)(1), 226.19(a)(1), (b)(1), 226.22(a)(4) (2012).) Plaintiffs sought expungement of the notice of default and other negative credit reports.

Claims under TILA for damages are subject to a one-year statute of limitations (15 U.S.C. § 1640(e).) There is disagreement whether the period of limitations commences on the date the credit contract is executed (*Wachtel v. West* (6th Cir. 1973) 476 F.2d 1062, 1065), or at the time the plaintiff discovered, or should have discovered, the acts constituting the violation (*NLRB v. Don Burgess Construction Corp*. (9th Cir. 1979) 596 F.2d 378, 382). "[T]he doctrine of equitable tolling, may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had

7

reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." (*King v. State of Cal.* (9th Cir. 1986) 784 F.2d 910, 915.) *King* emphasized that in determining whether or not a limitations period should be tolled, a court should assess "whether tolling the statute [would] effectuate the congressional purpose of the Truth-in-Lending Act." (*Ibid.*) "'[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA claim.' [Citation.] Equitable tolling is 'appropriate where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his [or her] rights.' [Citation.]" (*Deaville v. Capital One Bank* (W.D.La. 2006) 425 F.Supp.2d 744, 752; see also *Baker v. Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 323.)

TILA "specifically exempts from its scope extensions of credit for business or commercial purposes." (*Poe v. First Nat. Bank of DeKalb Cty.* (5th Cir. 1979) 597 F.2d 895, 896.) TILA applies to transactions in which "the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." (15 U.S.C. § 1602(h).) In evaluating whether a certain loan was made for commercial purposes, the emphasis is on the purpose of the transaction and not the categorization of the properties used to secure the loan. "Whether an investment loan is for a personal or a business purpose requires a case by case analysis." (*Thorns v. Sundance Properties* (9th Cir. 1984) 726 F.2d 1417, 1419.)

Here, even assuming TILA applied to plaintiffs' loan (although Aztec allegedly fraudulently made the loan as a commercial loan), plaintiffs' claims are time-barred. Plaintiffs should have discovered, by reading their loan documents and reviewing Aztec's disclosures, Aztec's violation of TILA prior to the foreclosure in September 2010. Thus, they cannot rely on the discovery doctrine to delay the running of the statute, which commenced with the origination of the loan in September 2006.

Further, they cannot rely on a recoupment claim under TILA to avoid the bar of the statute of limitations. Generally, "a defendant's right to plead 'recoupment,' a "'defense arising out of some feature of the transaction upon which the plaintiff's action is grounded,'" [citation] survives the expiration" of the limitations period. (*Beach v. Ocwen Fed. Bank*) (1998) 523 U.S. 410, 415 [118 S.Ct. 1408, 140 L.Ed.2d 566].) To avoid dismissal at this stage, plaintiffs must show that "(1) the TILA violation and the debt are products of the same transaction, (2) the debtor asserts the claim as a defense, and (3) the main action is timely." (*Moor v. Travelers Ins. Co.* (5th Cir. 1986) 784 F.2d 632, 634.) TILA (15 U.S.C. § 1640(e)) makes recoupment available only as a defense in "an action to collect [a] debt."

Here, plaintiffs cannot use a recoupment claim to escape the bar of the statute. Although plaintiffs' TILA claim satisfies the first prong of the test as it is related to the mortgage debt, the action here fails the second prong because plaintiffs attempt to use a recoupment claim affirmatively, and not as a defense, and thus exceed the scope of TILA.

**B.      UCL**

Plaintiffs' second cause of action alleged that Aztec violated the UCL by inserting into the loan documents the provision that the loan was for a nonowner occupied investment property, and Aztec made untrue or misleading statements and falsified the loan documents. Plaintiffs alleged that Aztec violated TILA, FDCPA, the Rosenthal Act, and the Mortgage Brokers and Bankers Fiduciary Duty Law, which predicates satisfy the UCL.

"[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." (Bus. & Prof. Code, § 17200.) "The UCL defines unfair competition as 'any unlawful, unfair or fraudulent business act or practice.' [Citation.] Therefore, under the statute 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent.'" (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311.) For unfair business practices actions under the unlawful prong, "'an action based on Business and

9

Professions Code [section] 17200 to redress an unlawful business practice "borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder.'" (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.) The focus of the UCL is "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." (*In re Tobacco Cases II*, at p. 312.) The remedies available under the UCL are limited to injunctive, restitutionary and related relief (Bus. & Prof. Code, § 17203; *State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1303.) However, restitutionary or injunctive relief is not mandatory; rather, equitable considerations may guide the court's discretion in fashioning a remedy for a UCL violation. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 180.) The statute of limitations on UCL claims is four years from the date of accrual. (Bus. & Prof. Code, § 17208.)

Here, as discussed below, plaintiffs have stated a claim for violation of the Rosenthal Act upon which they can base their UCL claim. As a result, the trial court erred in sustaining the demurrer to this cause of action.

### C.    FDCPA

Plaintiffs' fourth cause of action[6] alleged that Aztec violated the FDCPA by using unfair and unconscionable means to collect its debt, including sending deceptive letters and making phone calls to plaintiffs, making false reports to credit agencies, and increasing the amount of the mortgage.

The term "debt collector" is defined in title 15 United States Code section 1692a(6) as follows: "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The

[6] The complaint omitted a third cause of action.

10

courts which have looked at the definition of "debt collector" have uniformly held that the FCDPA does not apply to a bank acting to collect a debt owed to itself. (See *Thomasson v. Bank One, Louisiana, N.A*. (E.D.La. 2001) 137 F.Supp.2d 721, 724 [in collecting on its own debts, a bank does not meet the criteria of a 'debt collector' pursuant to the FDCPA "because as a bank it primarily loans money to consumers rather than collects outstanding debts"].) Here, plaintiffs' complaint alleges that Aztec was attempting to collect a debt on its own behalf; under the FDCPA, Aztec is not a debt collector. Therefore, the claim fails as a matter of law.

### D.    *Rosenthal Act*

Plaintiffs' fifth cause of action alleged that Aztec violated the Rosenthal Act by using unfair and unconscionable means to collect its debt, including sending deceptive letters and making phone calls to plaintiffs, making false reports to credit agencies, and increasing the amount of the mortgage.

The Rosenthal Act "was enacted 'to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts. [Citation.] . . . A debt collector violates the act when it engages in harassment, threats, the use of profane language, false simulation of the judicial process, or when it cloaks its true nature as a licensed collection agency in an effort to collect a consumer debt." (*Sipe v. Countrywide Bank* (E.D.Cal. 2010) 690 F.Supp.2d 1141, 1151.) The Rosenthal Act defines a debt collector as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." (Civ. Code, § 1788.2, subd. (c).) The statute of limitations on a Rosenthal Act claim is one year. (Civ. Code, § 1788.30, subd. (f).)

Here, plaintiffs alleged that Aztec was a "debt collector" within the meaning of the Rosenthal Act and that Aztec commenced harassing them about their debt in or about fall 2009, and that the calls continued. Although not specifically pleaded, we can assume for the sake of demurrer that Aztec's calls continued at least until the commencement of

11

foreclosure in September 2010; under the continuing tort doctrine, the statute did not run until this time, which is less than a year before the filing of plaintiffs' initial complaint in June 2011. Thus, the trial court erred in sustaining a demurrer to this claim. We note that the trial court in ruling on the demurrer only reached the statute of limitations issue with respect to this claim, and did not address the merits.

### E. Negligence

Plaintiffs' sixth cause of action for negligence alleged that Aztec had a duty to perform acts as a lender in a manner not to cause plaintiffs harm, and breached those duties by failing to make required disclosures, taking fees to which it was not entitled, wrongfully making negative reports about plaintiffs' credit, and taking payments to which it was not entitled.

A financial institution owes no duty of care to a borrower when the transaction does not exceed the scope of the mere lending of money. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096–1097.) Here, plaintiffs have not alleged any conduct by Aztec that goes beyond the scope of lending money to plaintiffs. Thus, plaintiffs' claim for negligence fails.

### F. Breach of Fiduciary Duty

Plaintiffs' seventh cause of action for breach of fiduciary duty alleged that Aztec owed a fiduciary duty to plaintiffs under Civil Code section 2923.1, which imposes a duty on mortgage brokers, and that Aztec breached that duty by obtaining a mortgage for plaintiffs that had unfavorable terms and which they ultimately could not afford, by securing for itself a secret profit, by falsely documenting the nature of the loan by surreptitiously inserting a statement that the loan was nonresidential when in fact it was residential, and charging a commercial rate of interest for a residential loan.

A lender owes no fiduciary duty of care to a borrower in an arm's length financial transaction. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206.) However, Civil Code section 2923.1, subdivision (a), provides: "[a] mortgage broker providing mortgage brokerage services to a borrower is the fiduciary of the borrower." A

12

mortgage loan broker is customarily a person "retained by a borrower to act as the borrower's agent in negotiating an acceptable loan." (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 782, italics omitted; see also Civ. Code, § 2923.1, subd. (b) ["'Mortgage broker' means a licensed person who provides mortgage brokerage services. . . .' . . . 'Mortgage brokerage services' means arranging or attempting to arrange, as exclusive agent for the borrower or as dual agent for the borrower and lender, for compensation or in expectation of compensation, paid directly or indirectly, a residential mortgage loan made by an unaffiliated third party"].)

Here, Aztec owed no fiduciary duty to plaintiffs as their lender. Further, plaintiffs have not pleaded that Aztec acted as a mortgage broker in procuring their loan, and thus Civil Code section 2923.1 does not apply to their loan. The trial court property sustained Aztec's demurrer on this cause of action.

### G.    *Fraud*

Plaintiffs' eighth cause of action for fraud alleged that Aztec misrepresented material facts, including that the interest rate on the loan was the lowest rate available, that interest would accrue only from the date of disbursement of funds, and by inserting documents specifying that the loan was nonresidential. Plaintiffs alleged the representations were false when made, were made with the intent that plaintiffs rely thereon, and that plaintiffs relied on them to their detriment.

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

A necessary element of the defense of fraud in the execution is reasonable reliance. That is, when a plaintiff asserts that the defendant misrepresented the nature of the contract, the contract is not considered void due to the fraud if the plaintiff had a reasonable opportunity to discover the true terms of the contract. The contract is only

13

considered void when the plaintiffs' failure to discover the true nature of the document executed was without negligence on the plaintiff's part. (*Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394, 419–420.) This issue usually arises when the plaintiff failed to read the terms of the contract, relying instead on the defendant's representation as to the effect of the contract. It is not reasonable to fail to read a contract; this is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract. (*Id.* at pp. 423–424.) Reasonable diligence requires a party to read a contract before signing it. (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674.) This presumes, however, that the parties were dealing at arm's length. When the parties are in a fiduciary relationship, the same degree of diligence is not required of the nonfiduciary party. (*Stafford v. Shultz* (1954) 42 Cal.2d 767, 777.) If the defendant is in a fiduciary relationship with the plaintiff which requires the defendant to explain the terms of a contract between them, the plaintiffs' failure to read the contract could be reasonable. (*Lynch v. Cruttenden & Co.* (1993) 18 Cal.App.4th 802, 808–809.) In such a situation, the defendant fiduciary's failure to perform its duty would constitute constructive fraud (*Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 854), the plaintiff's failure to read the contract would be justifiable (*Twomey v. Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 715), and constructive fraud in the execution would be established.

A cause of action for fraud is governed by a three-year statute of limitations. (Code Civ. Proc., § 338, subd. (d).) The action accrues when the aggrieved party discovers the facts constituting the fraud. (*Ibid*.) "The courts interpret discovery in [the] context [of fraud] to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information [that] would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery. Wrong and wrongdoing in this context are understood in their lay and

14

not legal senses. [Citation.] [¶] . . . "'Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books), the statute commences to run." [Citation.]'" (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374.)

Here, plaintiffs cannot state a claim for fraud based upon the asserted execution of the loan documents based on nondisclosures of the loan's characterization as a commercial loan, the interest rate charged, or the accrual date of interest because those terms were presumably contained in the loan documents plaintiffs failed to attach to their complaint. Further, as Aztec owed no fiduciary duty, plaintiffs cannot rely on such a duty to excuse their failure to read the loan documents.

### H.    *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs' ninth cause of action for breach of the implied covenant of good faith and fair dealing alleged that Aztec had a duty to pay at least as much regard to plaintiffs' financial interests as its own; Aztec had a duty to comply with the laws of California; and Aztec had a duty to act fairly towards plaintiffs in connection with the loan. Plaintiffs alleged that Aztec breached that duty by failure to disclose to plaintiffs the true nature of the loan, failing to give plaintiffs required disclosures, and demanding that plaintiffs pay more interest than they were required to pay.

A cause of action for breach of the implied covenant of good faith and fair dealing is premised on the breach of a specific contractual obligation. (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031–1032 [the purpose of the implied covenant is to "'prevent a contracting party from engaging in conduct which . . . frustrates the other party's rights to the benefits of the contract'"].) "Every contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract. [Citations.] The implied covenant protects the reasonable expectations of

15

the contracting parties based on their mutual promises. [Citations.] The scope of conduct prohibited by the implied covenant depends on the purposes and express terms of the contract. [Citation.] Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract." (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 885.) The claim is controlled by the four-year statute of limitations applying to contracts. (*Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 220–221.)

Here, plaintiffs essentially allege that Aztec breached the loan contract by charging more interest and principal than legally was due and by failing to comply with applicable laws. The complaint alleges that Aztec first breached the loan in fall 2009 by making calls to collect what it asserted was owed to it and which plaintiffs assert Aztec was not owed. At that time, the statute of limitations would have begun to run. The complaint filed in June 2011 was therefore timely on plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. We note that the trial court in ruling on the demurrer only reached the statute of limitations issue with respect to this claim, and did not address the merits.

### I. *Negligent Infliction Of Emotional Distress*

Plaintiffs' 10th cause of action for negligent infliction of emotional distress alleged that as a result of Aztec's negligence, plaintiffs had suffered from severe emotional distress.

Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.) Damages for emotional distress are recoverable only if the defendant has breached a duty to the plaintiff. "[T]his independent duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship" between the parties. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984–985.)

16

Here, as plaintiffs cannot state a claim for negligence, they cannot state a claim for negligent infliction of emotional distress. Thus, the trial court did not err in sustaining Aztec's demurrer without leave to amend.

### J.      Intentional Infliction Of Emotional Distress

Plaintiffs' 11th cause of action for intentional infliction of emotional distress alleged that as a result of Aztec's conduct, plaintiffs had suffered from severe emotional distress.

To recover on a claim for intentional infliction of emotional distress, the plaintiff must demonstrate (1) outrageous conduct by the defendant, (2) directed at the plaintiff with the intent of causing extreme emotional distress, (3) actually and proximately causing emotional distress to the plaintiff, and (4) plaintiff's severe or extreme emotional distress. (*Trerice v. Blue Cross of California* (1989) 209 Cal.App.3d 878, 883.) Outrageous conduct is conduct which exceeds the bounds of that usually tolerated in civilized society. Such conduct must be directed at the plaintiff or occur in the plaintiff's presence. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) The statute of limitations for an intentional infliction of emotional distress claim is two years. (Code Civ. Proc., § 335.1.) The claim accrues when the tortfeasor's conduct first causes emotional distress. (*Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 232 [tort complete when effect of defendant's conduct results in severe emotional distress].)

Plaintiffs' complaint does not allege when they suffered severe emotional distress, but does allege that the intentional infliction of emotional distress was caused by all of Aztec's conduct. Assuming that Aztec's attempts to collect its loan in fall 2009 started the clock ticking on allegedly extreme and outrageous conduct, the two-year statute would not bar plaintiffs' claim. However, recovery on this theory requires a showing of "'outrageous'" conduct which is "'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" "An assertion of legal rights in pursuit of one's own economic interests does not qualify as 'outrageous' under this standard." (*Yu v.*

17

*Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377, 1397–1398.)  Thus, Aztec's attempts to collect its loan would not support a claim for emotional distress.

### K.    *Declaratory Relief*

Plaintiffs' twelfth cause of action for declaratory relief sought a declaration of the rights and duties of the parties under the loan documents, a declaration that plaintiffs did not owe Aztec the amounts it claimed, and a declaration of the amounts plaintiffs owed to Aztec.

Code of Civil Procedure section 1060 provides in relevant part:  "Any person interested under a written instrument . . . , or under a contract, or who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract."  Declaratory relief operates prospectively, serving to set controversies at rest before obligations are repudiated, rights are invaded or wrongs are committed.  Thus the remedy is to be used to advance preventive justice, to declare rather than execute rights.  (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 360.)  Resort to declaratory relief therefore is appropriate to attain judicial clarification of the parties' rights and obligations under the applicable law.  (*Id*. at p. 362.)

The limitations period for declaratory relief claims depends on "the right or obligation sought to be enforced, and the [statute of limitations'] application generally follows its application to actions for damages or injunction on the same rights and obligations."  (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 821.)  "A four-year statute of limitations applies to obligations or liabilities founded upon an instrument in writing."  (Code Civ. Proc., § 337, subd. (1); *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 883.)  The limitations period does not begin to run until a breach occurs.  (*Romano v. Rockwell Internat., Inc*. (1996) 14 Cal.4th 479, 489.)  A party may seek declaratory relief before there has been an actual breach of an obligation; in

18

such cases the limitations period still does not begin to run until the breach occurs. (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 734.)

Here, plaintiffs dispute the amounts owed under the loan documents, meaning a four-year statute applies to their contract claims. According to the allegations of the complaint, the dispute arose sometime in the fall of 2009 when Aztec began to call about the loan. Thus, plaintiffs' claim for declaratory relief is not time-barred.

## DISPOSITION

The judgment is reversed on plaintiffs' claims for violations of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.), violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), and plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and for declaratory relief. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting, P. J.


CHANEY, J.


19