Filed 5/23/22  Foothill Heights Care Center, LLC v. Jimenez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FOOTHILL HEIGHTS CARE CENTER, LLC, <br><br>     Defendant and Appellant, <br><br> v. <br><br> LIILLIAN JIMENEZ, <br><br>     Plaintiff and Respondent. | B311976 <br><br> (Los Angeles County <br> Super. Ct. No. 20STCV12843) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and John Haubrich, Jr. for Defendant and Appellant.

McIntyre & Larson, Jeffrey Curran McIntyre and Robert Garcia, Jr. for Respondent and Plaintiff.

_____

Defendant and appellant Foothill Heights Care Center, LLC, appeals from an order denying a petition to compel arbitration in favor of plaintiff and respondent Lillian Jimenez in this employment discrimination action. The trial court found there was no objective manifestation of assent to the arbitration agreement under the circumstances of this case, because both parties knew Jimenez did not understand the document when she signed it; Foothill knew Jimenez had very limited understanding of English, her requests to obtain a translation were denied, and Foothill required her to sign the document by the end of her shift to keep her job. On appeal, Foothill contends: 1) although the company was aware Jimenez did not understand the contents of the arbitration agreement, Jimenez's signature on the arbitration agreement was sufficient to constitute her objective manifestation of assent; and 2) her continued employment with Foothill also constituted acceptance of the arbitration agreement. We conclude substantial evidence supports the trial court's finding that there was no objective manifestation of assent to the arbitration agreement, and under the circumstances, her continued employment did not constitute acceptance. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jimenez was born in Mexico City in 1971 and grew up speaking Spanish. She has a very limited knowledge of English and needs a translator for discussions in English that are not simple or routine. She often relies on her daughter to translate for her when necessary.

2

Foothill is a skilled nursing facility. Foothill's predecessor-in-interest hired Jimenez to work as a certified nursing assistant in 2007. Her job did not require extensive knowledge of English; she could competently perform her job duties with simple documentation entries in the patients' charts. She cannot read or write English beyond the limited routine statements necessary to perform her job tasks.

Foothill took over operation of the nursing facility at the end of 2015. On December 31, 2015, approximately eight employees were called into the office, including Jimenez. Foothill said the employees needed to reapply for their positions and fill out employment paperwork to stay at their jobs and work for Foothill.

Several of the employees spoke no English at all. Foothill gave the employees a handful of documents, none of which were in Spanish. Three human resources representatives were present to assist the employees with the paperwork. One Foothill representative spoke fluent Spanish and could have translated or answered questions, but no one explained the paperwork to the employees. The human resources representatives told Jimenez where to sign the documents. Jimenez asked for a Spanish translation of the documents, but was told there was no translation available. She asked if she could take the documents home for her daughter to translate, but was told that was not allowed. When she said that she did not want to sign the documents without having her daughter read them to her, she was told that she was required to sign the documents on December 31, 2015, before leaving work for the day. She did not know what the documents were that she signed, but she did not want to jeopardize her position, so she signed them. She did not

3

know that she was giving up her legal right to have a jury trial and related legal rights. She was never provided with a copy of the agreement in English or in Spanish.

As part of the employment agreement that she entered into with Foothill, Jimenez signed a four-page arbitration agreement which stated in English, "[T]he Company and I agree that this Dispute Resolution Agreement (the 'Agreement') will apply to all covered legal claims between the Company and me. [¶] . . . Except as otherwise provided in this Agreement, both the Company and I mutually agree that all disputes arising out of or related to my application for employment, employment relationship with, or the termination of my employment from, the Company shall be resolved only by an Arbitrator through final and binding arbitration and not by way of court or jury trial." The provisions of the arbitration agreement included the method for selection of an arbitrator, the right to conduct civil discovery, responsibility for payment of the arbitrator's fees, an agreement not to disclose the existence or results of any arbitration, and a waiver of the right to a class action.

Jimenez's signature followed a provision stating that she had received, read, understood, and agreed to all of the terms in the dispute resolution agreement, and that her continued employment following receipt of the agreement constituted mutual acceptance of the agreement regardless of whether she signed it. In addition, Jimenez initialed several statements acknowledging that she had an opportunity to read the arbitration agreement and ask questions before she signed the arbitration agreement, including a reasonable opportunity to consult with an attorney about the arbitration agreement before signing it, and that she understood the terms and conditions of

4

the agreement. Her employment with Foothill began the following day on January 1, 2016.

Jimenez believed that she was subject to discrimination on the basis of her age and disability beginning in August 2018, and constructively discharged in February 2019. She received a right-to-sue letter from the Department of Fair Employment and Housing in April 2019. Foothill "released" Jimenez a year later, on March 18, 2020, because she had "abandoned" her position with Foothill. On April 1, 2020, she filed a lawsuit against Foothill for disability and age discrimination, failure to provide reasonable accommodations, failure to engage in a good faith interactive process, retaliation, and wrongful termination in violation of public policy.

In October 2020, Foothill filed a motion to compel arbitration based on the parties' written agreement. Jimenez opposed the motion. A hearing was held on the motion to compel arbitration on March 10, 2021, but no reporter's transcript has been included in the appellate record. The trial court found the evidence showed Foothill knew, prior to requiring Jimenez to sign the arbitration agreement, that she could not read the agreement. The arbitration agreement requires language facility far beyond simple English skills. Jimenez asked for a Spanish translation, and she asked to take the agreement home for her daughter to translate, but both requests were denied. Based on the evidence, the trial court found there was no objective manifestation of assent to the agreement. As a result, the agreement was not valid and enforceable under California law. The trial court denied the motion to compel arbitration.

The court commented, "It is odd that if the employer actually negotiated the agreement in Spanish, so that she

5

understood what she was signing and if it were a loan, lease, reverse mortgage, or fees for legal services, she would have had to receive a translation of each term into Spanish under Civil Code section 1632.  By placing a document in front of her that she cannot understand and forcing her to sign immediately, in [Foothill's] view, she is entitled to no protection regarding understanding what she is signing before giving up her constitutional right to a jury trial."  Foothill filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

"California statutes create a 'summary proceeding' for resolving petitions or motions to compel arbitration.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).)  'The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  [Citation.]  In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.  (*Engalla,* at p. 972.)" (*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 590 (*Chambers*).)

A petition to compel arbitration is essentially an equitable proceeding to require specific performance of a contract.

(*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 411.)  The trial court must determine whether an agreement to arbitrate exists.  (*Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 517 (*Caballero*).)  "'If that preliminary question requires the resolution of factual issues, then the court must resolve such issues . . . .' [Citation.]" (*Ibid*.)

General contract law applies to determine whether the parties formed a valid agreement to arbitrate their dispute. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.)  The same rules of construction apply to an arbitration agreement as any other contract.  (*Chambers*, *supra*, 71 Cal.App.5th at p. 590.)  If the order denying the petition to compel arbitration rests solely on a question of law on undisputed facts, we review the issue de novo.  (*Caballero*, *supra*, 69 Cal.App.5th at pp. 517–518.)

"'If the [trial] court's decision regarding arbitrability is based on resolution of disputed facts, we review the decision for substantial evidence.' (*Baker*[ *v. Italian Maple Holdings, LLC* (2017)] 13 Cal.App.5th [1152,] 1158.)" (*Caballero*, *supra*, 69 Cal.App.5th at p. 518.)  In such a case, "'"we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of the credibility of witnesses and the weight of the evidence."' [Citation.]'" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) "'"[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record."' [Citation.]" (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686 (*Ramos*).)

7

## Mutual Assent

Foothill contends the evidence establishes the existence of a binding arbitration agreement. We conclude the trial court's finding that there was no mutual assent to the agreement is supported by substantial evidence.

For a valid contract to exist, the parties must consent to the agreement. (*Caballero*, *supra*, 69 Cal.App.5th at p. 518.) The consent must be mutual, freely given, and communicated by each party to the other. (Civ. Code, § 1565.) Consent is not mutual unless the parties agree upon the same thing in the same sense. (Civ. Code, § 1580.) To determine whether there was mutual consent for a contract, the court does not consider the subjective intentions or state of mind of the parties. (*Leo F. Piazza Paving Co. v. Bebek & Brkich* (1956) 141 Cal.App.2d 226, 230.) Instead, the court applies an objective standard to determine what a reasonable person would believe from the parties' outward expressions of consent. (*Ibid*.) In other words, the court relies on "'the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.' [Citation.]" (*Caballero*, *supra*, 69 Cal.App.5th at p. 518.)

"'No law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract[.]'" (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674.) "'Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him.' (1 Witkin, Summary of Cal. Law (9th ed. 1987) § 120, p.

145.)" (*Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163; *Ramos, supra,* 242 Cal.App.4th at p. 686.)

There are exceptions to the general rule, however. For example, "if the one who signs the instrument is unaware of the contractual provisions, he cannot be said to have agreed to them. Thus, '[a]n exception to [the] general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case, no contract is formed with respect to the undisclosed term. [Citations.]' [Citation.]" (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 702.)

The trial court's finding that Jimenez did not consent to the arbitration agreement is supported by substantial evidence. Ordinarily, Jimenez's initials and signature on the agreement would constitute an objective manifestation of her intent to enter into an agreement, despite her limited ability to understand English and her failure to have someone translate the document for her. In this case, however, Foothill knew that Jimenez did not understand the document when she signed it. Foothill was aware that her ability to speak and understand English was limited. The arbitration agreement contained detailed provisions on sophisticated legal concepts. Jimenez exercised diligence to try to obtain a translation of the terms of the agreement. She requested a translation of the document in Spanish, alerting Foothill that she did not understand the agreement and needed a translation, but none was available. She asked to take the document home to have her daughter translate the document for her, but Foothill refused her request and insisted the documents be signed before the end of the working day. Knowing Jimenez could not understand the documents, Foothill presented the

9

paperwork as standard employment documents required for "onboarding" with a new employer. Foothill had superior bargaining power, presented the agreement as a condition of continuing her employment, and required her to sign it immediately. Jimenez did not have a reasonable opportunity to obtain a translation or have an attorney explain the document. Although Foothill was not required to explain the terms of the agreement to Jimenez, once Foothill knew Jimenez did not understand the agreement and had no opportunity to obtain a translation before signing it to keep her employment, Foothill could not reasonably rely on her signature alone as a manifestation of assent to its terms.

Foothill did not provide Jimenez with a copy of the document for her own records, which would have allowed her to obtain a translation afterward and withdraw her consent. The trial court's finding that her continued employment was not evidence of acceptance of the terms of the arbitration agreement is supported by substantial evidence, because without a copy of the documents, she did not have any opportunity after the documents were signed to learn their contents and provide consent through her actions.

The cases relied on by Foothill are easily distinguished, because none involved enforcement by a party who was fully aware that the signatory could not read English and did not know what she was signing. For example, in *Randas, supra,* the appellate court enforced a liability waiver that Randas had signed, even though she could not read English. (*Randas, supra,* 17 Cal.App.4th at p. 160.) The court noted that the release stated she had read it, and the other contracting party had no reason to suspect Randas did not or could not read the release that she

10

signed.  (*Id.* at p. 163.)  In contrast, in the instant case, the evidence established that Foothill was well aware Jimenez could not read the arbitration agreement.  Jimenez acted diligently by inquiring about getting a translation, but Foothill did not allow an opportunity to obtain one.  Based on the evidence in this case, Foothill cannot claim to believe that Jimenez's signature manifested assent to the terms of the arbitration agreement, when Foothill knew that she had no idea what she was signing.

The case of *Caballero, supra,* 69 Cal.App.5th 512, is similarly distinguishable.  In *Caballero*, the appellate court enforced an arbitration agreement that Caballero signed, even though he could not read English and the agreement was not explained to him before he signed it.  (*Id.* at pp. 516–517.)  The custom and practice of the Premier Care facility was to translate and explain the facility's arbitration agreement when patients or their representatives appeared not to understand English.  (*Ibid.*)  The court found Caballero's signature manifested his agreement to the terms of the document.  (*Id.* at pp. 518–519.)  The court noted, however, that there was no evidence Caballero had asked any employee of Premier Care for a Spanish version of the agreement or assistance in understanding the English version.  (*Ibid.*)  "On this record, Caballero's failure to take steps to learn the contents of the agreement is attributable to his own negligence and may not be imputed to Premier Care."  (*Ibid.*)  In contrast, in the present case, Jimenez did not simply sign a document that she could not read.  She asked for a translation of the document from Foothill.  When told there was no written translation, she sought permission to take it home so that her daughter could translate it.  Foothill refused the request and required her to sign the document before the end of the day in

11

order to return to her job.  Foothill knew that Jimenez did not understand the document, did not volunteer to translate it, and refused her request to take it home to obtain a translation.  No reasonable person who was aware that Jimenez could not read or understand the agreement could believe from her signature alone that she assented to its terms, forming a contract.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Respondent Lillian Jimenez is awarded her costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

BAKER, J.