Filed 5/14/24  Barajas v. Justin Vineyards & Winery CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| OLIVIA BARAJAS et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JUSTIN VINEYARDS & WINERY, LLC, <br><br> Defendant and Appellant. | 2d Civil No. B325886 <br> (Super. Ct. No. 19CVP-0383) <br> (San Luis Obispo County) |

Appellant Justin Vineyards and Winery, LLC appeals the denial of its motions to compel arbitration of the complaint filed by respondents Olivia Barajas, William Fuentes, Blanca Verduzco, and Patricia Verduzco.  (Code Civ. Proc., § 1294, subd. (a).)  Appellant contends the trial court erred when it found the English language arbitration agreements signed by respondents were void due to fraud in the execution.  The record contains no evidence respondents misrepresented the terms of those documents.  We reverse and remand, leaving to the trial court's

discretion whether to consider respondent's alternative defenses to enforcement, e.g., unconscionability.

FACTUAL AND PROCEDURAL HISTORY

*The Arbitration Agreements*

Appellant operates a vineyard and onsite winery in Paso Robles. Respondents are former cellar workers at the winery. Barajas, Fuentes, and Patricia[1] joined the company in 2015. Blanca joined in 2017. All four are Spanish speakers who knew little or no English when they started.

Respondents signed a "Confidentiality, Trade Secrets, and Arbitration Agreement" at the time of hiring. It contained the following provisions: "a. Mutual Agreement to Arbitrate. Both the Company and Employee voluntarily agree that any claim, dispute, or controversy arising out of or relating to Employee's employment with the Company or the termination of that employment shall be submitted to final and binding arbitration in accordance with the terms of this arbitration provision. Examples of claims, disputes or controversies that must be resolved through the process set forth in this provision rather than in court include, but are not limited to, embezzlement/conversion, disclosure of trade secrets, breach of confidentiality agreement, wage and benefit claims; contract claims; personal injury claims; claims for equitable relief; tort claims, such as claims for wrongful termination and defamation; [and] discrimination and harassment claims. . . . This Agreement applies to all claims that the Company may have against Employee, as well as all claims that Employee may have against the Company, including its owners, directors, officers, employees,

---

[1] We use Patricia's and Blanca's first names for clarity. No disrespect is intended.

managers, members, agents, and parties affiliated with its employee benefit and health plans, past and present and each of them. [¶] g. <u>Acknowledgement</u>. BY VOLUNTARILY AGREEING TO THIS ARBITRATION PROVISION, THE COMPANY AND EMPLOYEE BOTH GIVE UP THEIR RIGHTS TO HAVE DISPUTES BETWEEN THEM HEARD BY A JURY OR RESOLVED IN ANY OTHER FORUM, INCLUDING COURT."

Respondents also signed an offer letter that accompanied the Agreement. It stated: "WE BOTH AGREE THAT ANY DISPUTE ARISING WITH RESPECT TO YOUR EMPLOYMENT AND ANY TERMINATION OF SUCH EMPLOYMENT SHALL BE CONCLUSIVELY SETTLED BY FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE ARBITRATION PROCEDURES DESCRIBED IN THE CONFIDENTIALITY, TRADE SECRETS, AND ARBITRATION AGREEMENT ATTACHED HERETO." Respondents signed a second letter containing the same language when they were offered full time positions a year later. We refer to the Confidentiality, Trade Secrets, and Arbitration Agreements and offer letters collectively as the "Agreements."

*Defendant Moves to Compel Arbitration of Plaintiffs'*
*Wage and Hour Claims*

Appellant terminated respondents for unspecified reasons. They filed a putative class action complaint in 2019 alleging wage and hour violations. Appellant moved to compel each respondent to arbitration. Respondents opposed arbitration, arguing the Agreements were void due to fraud in the inception and unconscionable as well. They submitted declarations explaining how appellant mislead them into signing documents in a

3

language they did not understand.  The trial court ordered an evidentiary hearing on the sole issue of "whether Plaintiffs were fraudulently induced into entering into the Arbitration Agreements."

*Evidentiary Hearing*

The parties submitted the Agreements as exhibits.  Three of the four respondents testified:  Barajas, Patricia, and Blanca.  Barajas and Patricia provided similar accounts of their orientation in 2015.  They attended with respondent Fuentes and a fourth new hire, Nestor Chavez.  Defendant's director of human resources, Danny Hanson, began speaking to them in English.  Barajas, Patricia, and Fuentes could not understand.  Chavez exchanged words in English with Hanson then turned to them and said, "I'm going to be helping you all.  I'm going to interpret."  The group began chatting and "[g]etting to know one another."  Hanson left the room for about 20 or 30 minutes.  Barajas recalled Chavez "was translating documents a little bit because we had the paperwork that we were going to sign."  Chavez told them the documents contained "company policies," "requirements," and "[c]lauses" but he did not translate them word-for-word.  Barajas and Patricia insisted that neither Hanson nor Chavez mentioned arbitration during the orientation.

Appellant offered Barajas and Patrica full-time positions about a year later.  Hanson called them into his office separately.  He presented documents in English (the second offer letter, among others) and pointed to where they needed to sign.  He did not explain what the documents said, provide a translator, or give them Spanish versions to review.  The meetings lasted only a few minutes.

4

Blanca described receiving English-language documents by email before she began work in 2017.  She spoke to Alicia Ballesteros in human resources about the documents and how she could sign them electronically.  During their conversation Blanca said, "If they are documents so that I can start working, then it's fine."  Ballesteros told her where to sign but "did not translate anything" or explain the documents during the call.  Blanca began work the next Monday.  She did not attend an orientation like the other respondents.

Hanson called Blanca into his office about a week later to sign more papers.  Ballesteros attended the meeting over the phone to translate for Hanson.  Blanca asked what type of documents they were, and Ballesteros responded, "Requirements that all employees have to sign that want to work with us."  Blanca asked why she had to sign when she had done so electronically the prior week.  Ballesteros said "[A]ll the employees have to sign . . . .  It's nothing bad.  Be calm."  She also said "Don't worry" and "Just[] sign."  Blanca responded, "Well, you are from human resources, so I hope you are translating correctly."  Blanca felt Ballesteros was avoiding her questions.  She did not ask for a Spanish version of what she signed that day.

After also hearing testimony from Ballesteros and Hanson, the trial court took the matter under submission.

*Denial of Motions to Compel Arbitration*

The trial court denied the motions in a written ruling dated December 19, 2022.  It stated:  "The Court finds the presence of fraud in this case.  It is undisputed that the Plaintiffs in this case did not write, read, or speak English at the time they were hired with Justin.  Thus, it is unclear to the Court why Plaintiffs were

5

not simply given Spanish-language version[s] of the Agreements. This is particularly puzzling given Mr. Hanson's testimony regarding the increasing number of Spanish-speaking employees, especially during the harvest season. Neither Mr. Hanson nor Ms. Ballesteros offered an explanation why Justin did not provide Spanish-language documents to the Spanish-speaking employees."

It continued: "Both Patricia Verduzco and Olivia Barajas testified that Mr. Chavez, another cellar employee, provided rudimentary Spanish-language translation of the documents when they were hired during their onboarding. Their testimony was similar and credible. Conversely, the testimony of Mr. Hanson was not credible that there has never been an instance, in the hundreds or perhaps thousands of onboarding experiences he has conducted, that someone was not present in person or on the telephone to provide translation. And even when someone such as Ms. Ballesteros is 'present' on the telephone to provide translation, it is unclear how she can provide an accurate description of the documents when she is not physically present in person to go through the particular documents with each employee. It is also unclear how Ms. Ballesteros could gauge the employees' sense of understanding with respect to the documents when she is not in the employees' physical presence. The same is true for Mr. Hanson, given his position of authority over new employees and the fact that he does not speak their . . . language. [¶] Likewise, Blanca Verduzco's testimony that she spoke on the telephone with Ms. Ballesteros regarding documents, and then signed those documents electronically, was credible, and her statements regarding the chain of events regarding her hiring are

6

also credible and plausible. Mr. Hanson confirmed that Blanca was emailed documents prior to her first day of work."

It then concluded: "The evidence before the Court demonstrates that all the Plaintiffs knew they were signing something having to do with their employment. However, their claimed lack of knowledge regarding what, exactly, they were signing supports their fraudulent inducement claim, as do their statements regarding what they were told about the documents they were signing." The court did not address respondents' unconscionability argument.

## DISCUSSION

### *Fraud in the Execution Doctrine*

"Code of Civil Procedure section 1281, like section 2 of the [U.S. Arbitration Act], provides that predispute arbitration agreements are 'valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 406 (*Rosenthal*).) Contract law principles thus govern whether parties have agreed to arbitrate. (*Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 518 (*Caballero*).) "'[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it.'" (*Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163 (*Randas*); 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 118, pp. 159-160.)

Respondents contend appellant misrepresented the nature of the English-language documents they were signing. They invoke the doctrine of fraud in the execution—or, synonymously, fraud in the inception—as a contractual defense to enforcement of

7

the Agreement. Under the doctrine, "'"the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void."'" (*Rosenthal*, *supra*, 14 Cal.4th at p. 415, quoting *Ford v. Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1028, italics omitted.) Respondents "must show their apparent assent to the contracts— their signatures on the [Agreement]—is negated by fraud so fundamental that they were deceived as to the basic character of the documents they signed and had no reasonable opportunity to learn the truth. By their claim of fraud in the execution, plaintiffs do not seek equitable relief in the form of rescission or reformation, or damages for being misled, but, rather, a judicial determination they never assented to any contract." (*Id.*, at p. 425.)

The doctrine is best illustrated by examples. We briefly survey California's authorities on this subject.

Defendants in *C.I.T. Corp. v. Panac* (1944) 25 Cal.2d 547 were an illiterate couple who spoke little English. A construction company visited their home to solicit repair work. The representative purported to read them a "repair contract" but failed to mention it contained a promissory note. Defendants later withheld payment when a dispute arose over the work. The construction company sold the note to a purchaser who promptly sued to enforce it. The trial court sustained defendants' defense of fraud in the execution. The Supreme Court cited the representative's false assurance that he would read the entire contract to the couple, as well as his high-pressure tactics, as sufficient evidence to affirm on the theory.

Plaintiff in *Ramos v. Westlake Services LLC* bought a used car from defendant dealership. He spoke only Spanish but signed a contract in English after reviewing what the dealership said was the Spanish version of the contract. The court denied the dealership's motion to compel arbitration because the Spanish version omitted the arbitration clause. "By providing Ramos with a document that purported to be the Spanish translation of the English Contract it was asking him to sign," the court concluded, "[defendant] implicitly represented to Ramos that it was, in fact, accurate." (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 647, 690 (*Ramos*).) Omitting the reference to arbitration "'deprived [Ramos] of a reasonable opportunity to learn the character and essential terms of the [arbitration agreement he] signed.'" (*Ibid.*, quoting *Rosenthal*, *supra*, 14 Cal.4th at p. 428.)

Plaintiff in *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696 felt he was the victim of workplace harassment at defendant grocery store. The employee relations manager invited him to report the harassment by filling out a two-page form entitled "Notice of Dispute & Request for Resolution" that referred to defendant's binding arbitration policy. Plaintiff signed but later sued when the employer did not address his complaints. Defendant moved to compel arbitration. The trial court denied the motion after finding fraud in the execution. *Metters* affirmed. It noted the dispute form contained "confusing" and "legalistic" references to an arbitration policy that was not given to plaintiff. (*Id.* at p. 702.) "The context of this form," it concluded, "did not alert him he was agreeing to anything, let alone arbitration." (*Id.* at p. 703.)

9

*Rosenthal* found fraud as to some plaintiffs but not others. All plaintiffs were longtime customers of a bank who lost money on securities bought from a bank-affiliated investment company. Among them was Giovanna Greco, who understood very little English. The investment advisor took out client agreements and said he would read them while Greco's daughter translated. He described the securities as "having no risk of loss" and failed to mention the arbitration provision contained in the documents. He told Greco to sign and assured her they only repeated what he already said. (*Rosenthal*, *supra*, 14 Cal.4th at p. 427.) These statements established "facts sufficient to show . . . fraud in the execution . . . [i]n light of [Greco's] prior relationship with [the bank]." (*Id.* at p. 428.) This contrasted with the experience of Greco's co-plaintiffs who were told only that the agreements "were unimportant, or that [they] need not read them." (*Id.* at p. 424.) The latter statements "[did] not establish any actual concealment . . . of the arbitration clause, or any affirmative misrepresentations regarding the existence or meaning of an arbitration clause in the client agreements." (*Id.* at p. 426, italics omitted.)

*Sufficiency of Showing of Fraud in the Execution*

Appellant contends the record contains insufficient evidence of fraud even assuming respondents testified truthfully and credibly at the evidentiary hearing. The substantial evidence standard applies when, as here, the appealed decision is based on issues of fact. (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.) "'[W]e must "accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and

decision . . . .'" [Citations.]" (*Holley v. Silverado Senior Living Management, Inc.* (2020) 53 Cal.App.5th 197, 202.)

Signing a document in a language one does not fully understand does not bar enforcement of an arbitration agreement absent fraud. (*Ramos*, *supra*, 242 Cal.App.4th at p. 687, citing *Randas*, *supra*, 17 Cal.App.4th at p. 163.) We therefore look to respondents' undisputed testimony about the circumstances of their signing to determine: (1) whether appellant misrepresented the Agreements' terms, and, if so, (2) whether respondents reasonably relied on those misrepresentations. (See *Rosenthal*, *supra*, 14 Cal.4th at p. 419, quoting *Lynch v. Cruttenden & Co.* (1993) 18 Cal.App.4th 802, 807 ["'even in the absence of a fiduciary relationship plaintiff's failure to read a contract is excusable where reliance is placed on the misrepresentations of the other party'"].) We answer "no" to the first question and need not, it follows, reach the second.

We do not quarrel with the trial court's finding that giving Spanish-language documents to respondents would have helped them (and appellant's increasingly Hispanophone workforce) to better understand what they were signing. Nor are we blind to the demographic and socio-economic undercurrents of this and other wage and hour disputes, particularly those in occupations such as agriculture whose ranks are historically filled by recent immigrants and other populations vulnerable to exploitation. It remains, however, that "[i]f a party does not speak or understand English sufficiently to comprehend a contract in English, it is incumbent upon the party to have it read or explained to him or her." (*Caballero*, *supra*, 69 Cal.App.5th at pp. 518-519.) The trial court's fraud finding requires first and foremost sufficient

11

evidence of misrepresentation by appellant.  The record here contains no such misrepresentations.

A fellow new hire, not Hanson nor Ballesteros, offered to help "interpret" for Barajas, Patricia, and Fuentes.  They acknowledge he did not translate the Agreements verbatim. Unlike plaintiff in *Metters*, they signed knowing the Agreements contained "company policies," "requirements," and "clauses" relating to their employment with appellant.  Barajas and Patricia had similar experiences when appellant later promoted them to full-time positions.  Hanson presented them with English-language documents but did not provide a translator or Spanish versions.  He simply flipped through the pages and showed them where to sign.  Fuentes's account of his promotion meeting with Hanson is similar.  The trial court's finding of fraud is based entirely on appellant:  (1) failing to give all workers employment documents in their native tongues, (2) allowing a worker to translate for his co-workers informally, and (3) presenting the documents to them in one-on-one meetings with Hanson, who then showed where to sign.

Blanca's testimony likewise provides no evidence appellant misrepresented the Agreement.  Ballesteros spoke to Blanca in Spanish but "did not translate anything" when she signed electronically.  The following week, when signing the physical versions, Ballesteros "avoided" her questions and assured her that "[a]ll employees have to sign.  It's nothing bad.  Be calm." Such statements do not establish fraud in the inception.  (See *Rosenthal, supra,* 14 Cal.4th at pp. 426-427 ["the statements . . . to the effect the client agreements were merely a formality, or did not need to be read, were insufficient, even in light of the parties' relationship, to warrant a finding of fraud in the inception of the

12

agreements"].)  We might conclude differently had appellant given Blanca ostensibly complete oral translations (like Greco in *Rosenthal*) or written translations (as in *Ramos*) that excluded the provisions it would later seek to enforce.  It did not.

*Unconscionability*

Respondents also opposed the motion to compel on the grounds the Agreements were unconscionable.  We decline the parties' request to decide the issue.  The trial court limited the evidentiary hearing "to the issue of whether [respondents] were fraudulently induced into entering into the Arbitration Agreements."  We leave to its discretion on remand whether to reconsider the motions on this basis or others.

DISPOSITION

The order denying the motions to compel arbitration is reversed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.




CODY, J.


We concur:



GILBERT, P.J.



YEGAN, J.




13

Tana L. Coates, Judge

Superior Court County of San Luis Obispo

_____


Mallison & Martinez, Stan S. Mallison, Hector R. Martinez, and Gonzalo Quezada, for Plaintiffs and Respondents.

Roll Law Group, Lisa A. Stilson, Jenna W. Logoluso, and Matthew Onyett, for Defendant and Appellant.